In the Matter of Darrel Ray JENSEN, Debtor.

Glenda JENSEN, Plaintiff,

v.

Darrel Ray JENSEN, Defendant.

Bankruptcy No. 81–01187–3.
Adv. No. 81–1470–3.

United States Bankruptcy Court,
W. D. Missouri, W. D.

Jan. 21, 1982.

538

Bruce D. Neas, St. Joseph, Mo., for plaintiff.

William B. Korth, Kansas City, Mo., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND DECREE OF NONDISCHARGEABILITY OF DEFENDANT'S INDEBTEDNESS TO PLAINTIFF BASED UPON THE STATE COURT DISSOLUTION DECREE

DENNIS J. STEWART, Bankruptcy Judge.

Plaintiff, the former spouse of the debtor, has brought this action in the bankruptcy court for a decree of nondischargeability of the defendant debtor's obligation under the state court dissolution decree to pay certain specified joint debts of the debtor and the plaintiff. Trial of the issues joined by the pleadings was conducted on December 21, 1981. The plaintiff then appeared personally and by her counsel, Bruce D. Neas, Esquire, and the defendant also appeared personally and by his counsel, William B. Korth, Esquire. The material admissible evidence then adduced demonstrated the following. On March 30, 1981, the state dissolution court, the Circuit Court of Cass County, rendered its decree dissolving the marriage of plaintiff to defendant. As material to these proceedings, the state dissolution court directed, in the following language, that the defendant debtor was to pay certain of the joint debts of plaintiff and defendant:

"Husband and Wife acknowledge that they have the following debts:

1. Sears & Roebuck—$1,000.00.
2. Mastercharge—$1,400.00.
3. Wards—$140.00.
4. Dial Finance—$4,000.00.
5. Vickers—$325.00.
6. Cass County personal taxes.

Husband agrees to pay as his sole and separate obligation the above listed debts."

Elsewhere in the state court decree, it is provided that the plaintiff is to receive no

periodic maintenance and that she waives maintenance.[1] The plaintiff maintains, however, that she understood the provisions requiring the payment of joint debts by defendant to serve the function of an award of monies for her support.[2] The defendant denies that he had any such intention or expectation, although he states that he fully intended to pay in accordance with the state court decree until the absence of financial resources made it impossible for him to do so. The evidence which was adduced concerning the nature of the goods and services tends without contradiction to show that they were purchased either for the defendant's sole benefit or for necessaries and household living expenses.[3] The plaintiff, however, also received as part of the dissolution settlement a trailer house or mobile home, title to which she has since deeded to her mother. In her testimony in this court, the plaintiff sought to justify this transfer of property to her parent on the ground of her moral obligations to her mother for past favors. It does not appear whether the plaintiff still resides in the trailer.

### Conclusions of Law

Section 523(a)(5) of the Bankruptcy Code excepts from discharge "any debt to a ... former spouse ... for alimony to, maintenance for, or support of ... spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement..." "This provision will ... make nondischargeable any debts resulting from an agreement by the debtor to hold the debtor's spouse harmless on joint debts, to the extent that the agreement is in payment of alimony, maintenance or support of the spouse, as determined under bankruptcy law considerations that are similar to considerations of whether a particular agreement to pay money to a spouse is actually alimony or a property settlement." Legislative History of § 523(a)(5) of the Bankruptcy Code. Thus, an award of support or maintenance is nondischargeable, but a property settlement is dischargeable. But the characterization placed on the award by the state court in the decree is not determinative. "What constitutes alimony, maintenance, or support will be determined under the bankruptcy laws, not State law." *Id.* In the decisions which have guided the federal bankruptcy courts in making this determination, it is held that it is the *function* which the award was intended to serve which is the crucial issue. *Poolman v. Poolman*, 289 F.2d 332, 335 (8th Cir. 1961).[4] Thus, if the award was intended to serve a maintenance or support function, it is not dischargeable in bankruptcy. The evidence sufficiently demonstrates in this action that the award was intended to serve a support function. With respect to the joint debts

---

1. It is specified in the "separation agreement" which was incorporated into the dissolution decree that the "[w]ife is to receive no maintenance from the Husband at this time or any subsequent time."

2. Regardless of the characterization of an award in the divorce instrument itself, it is the actual function or purpose of that award which determines whether it is an award of maintenance, and thus nondischargeable, or a dischargeable property settlement. "Notwithstanding the labels placed on the provisions within a divorce decree by a state court, it is for this Court to make an independent determination as to what constitutes alimony, maintenance, or support for purposes of dischargeability in accordance with a federal standard ... Thus, payments made to the non-debtor spouse will be considered alimony if they are actually in the nature of support for the non-debtor spouse." *In re Vogt*, 14 B.R. 743, 745

(E.D.Va.Bkrtcy.1981), and cases and authorities there cited.

3. Although the evidence on this crucial, material issue was sparse, it is nevertheless uncontradicted that the following debts were created on account of items of which defendant took sole custody and use: Mastercharge (gasoline, costs of vacation and tools in defendant's sole custody); Dial Finance Company (principally a John Deere Tractor solely possessed, before repossession, by defendant); tax liability (based on vehicle in defendant's sole possession). The following were on account of household effects: Sears, Roebuck and Company (children's personal effects and tools of the trade for defendant); Montgomery Ward and Company (hot water heater and humidifier); Vickers (gasoline purchases).

4. See note 2, *supra*.

owed for goods and services purchased for the sole benefit of the debtor, the award must necessarily be deemed to have been for the purpose of sparing the plaintiff the necessity of paying the debtor's bills. Accordingly, the award was necessarily intended to free money that she might otherwise have to use to pay the debtor's bills so that she might use it for her own maintenance and support. This conclusion is further supported and buttressed by the evidence of plaintiff's known need at the time of the dissolution decree[5] and the defendant's stated intention to pay these debts. The facts otherwise shown with respect to the other debts, to the effect that they were for ordinary living expenses, tends to support the same conclusion. If the placing of a roof over the former spouse's head is to be considered as reflecting a support function, as it was in *Poolman v. Poolman, supra,* then so must provisions to pay expenditures for the necessities and ordinary staples of everyday life.[6] And, further, the plaintiff's need[7] and the defendant's intention to pay these bills at the time of the state court dissolution offer other support for this conclusion. It must therefore be found and concluded that the debts represented in the provisions of the dissolution decree were

intended to serve a maintenance or support function and are therefore nondischargeable in bankruptcy.

■ Counsel for the defendant argues that, because of the plaintiff's transferring her trailer home to her mother sometime subsequent to the dissolution of the marriage, she can be deemed currently to have no need for a "roof over her head," within the meaning of *Poolman v. Poolman, supra,* having disclaimed the one she had, and that therefore her current absence of need dictates a finding that the award was not one of nondischargeable maintenance. But the plaintiff's *current* need is an irrelevant consideration. Under the governing principles, the bankruptcy court must make its determination based upon the intended function of the award *at the time of the entry of the state court dissolution decree.* And, because debts which become due and owing after the commencement of the title 11 proceedings cannot be discharged in bankruptcy, the court of bankruptcy need not concern itself with current need or the absence of it. Rather, its office is only to determine the dischargeability *vel non* of debts due and owing at the time of commencement of the title 11 case.[8]

5. Under the provisions of the governing Missouri statutes, the need of a spouse is a material consideration which the state dissolution court must undertake in determining whether to award maintenance. See § 452.335 RSMo. Thus, the plaintiff's uncontradicted evidence of her dire and known financial need must be viewed as some evidence, albeit not conclusive, which tends to show that the "hold harmless" provisions of the Code were partly in recognition of this need and therefore classifiable as support or maintenance. See *In re Hoover,* 14 B.R. 592, 596, 597 (N.D. Ohio Bkrtcy. 1981).

6. See note 3, *supra.*

7. See note 5, *supra.*

8. Additional arguments have been made by the defendant. It is asserted that the indebtedness to Dial Finance Company is one to which only the debtor is signatory and is therefore necessarily dischargeable in bankruptcy. But, if these contentions are true, the matter is one to be settled or adjudicated by and between the debtor and Dial Finance Company, who is not a party to this action and whose absence as a party prevents this court from adjudicating this

issue in this action. On the basis of the facts and the law in this action, this court can only hold that any liability of the plaintiff to Dial Finance Company on this account must be paid by the defendant as a nondischargeable liability.

Defendant also refers to his own poverty and present inability to make the payments on the debts which are the subject of this action. The bankruptcy law in this respect however, does not make this a relevant issue or consideration in a dischargeability action.

It is also contended that cases, such as *Poolman v. Poolman,* 289 F.2d 332, 333 (8th Cir. 1961), cited in the text of this memorandum, "deal with mortgages, residences and attorney's fees but not with alleged items of furniture that may or may not be legimately secured." But furniture is a necessity of life just as is a house. The attitude of the framers of the Bankruptcy Code in this respect is reflected in the lien avoidance provisions which regard "household furnishings" as so essential to be so necessary to sustain human life at an acceptable level that a debtor in title 11 proceedings may avoid any lien upon them. See § 522(f)(2) of the Bankruptcy Code. In respect to plaintiff,

It is therefore

ORDERED, ADJUDGED AND DE-CREED that the defendant's liability to pay the debts described above in the quoted portion of the state court dissolution decree be, and it is hereby, declared to be nondischargeable in bankruptcy.

further, it is not necessary that the furniture or other household effects be subject to a security interest in order to make the "hold harmless" provisions of the separation agreement nondischargeable. Her creditors may enforce these debts against her without any security agreement under the applicable provisions of general law. And the defendant's contention that the debts cannot be regarded as liabilities until the creditors actually commence suit on them is obviously without merit.

The defendant further contends that it would be inequitable to require him to pay these debts when the plaintiff received more under the provisions of the dissolution decree than did the defendant. But this court is not authorized to reform the dissolution decree. It may only, according to the standards set forth in the text of this memorandum, determine the dischargeability of the liabilities created by its provisions.

The defendant also objects to the proffer in evidence, subsequent to the trial, of copies of the security agreement with Dial Finance Company. Several grounds are given in support of this objection—that Mr. Jensen is the only signatory and that "at the best, Dial Finance Company holds an unsecured interest without any reference whatsoever to either the vehicle or to the furniture items." But the objection itself admits that the debt is for furniture or automobiles—items of necessity according to the considerations stated above—and that is the only relevant point on which the security agreement might be regarded as admissible in evidence.