In re Terrance J. HOBBS dba Valley Glass & Valley Auto Glass, Debtor.

Sandra K. HOBBS, Plaintiff,

v.

Terrance J. HOBBS, Defendant.

Bankruptcy No. 82–00217.
Adv. No. 82–0289.

United States Bankruptcy Court,
D. Nevada.

April 15, 1983.

Alan R. Smith, Reno, Nev., for plaintiff.

William L. Gardner, Reno, Nev., for defendant.

## MEMORANDUM OPINION

ROBERT C. JONES, Bankruptcy Judge.

### INTRODUCTION

This matter presents the Court with an oft-litigated question: Whether a "hold harmless" agreement by a former spouse (incorporated within the divorce decree) to assume the payment of a former community debt is non-dischargeable under 11 U.S.C. § 523(a)(5) as being in the nature of alimony, maintenance, or support. For the reasons set forth below, this Court holds the subject debt to be dischargeable. The Court assumes jurisdiction of this matter pursuant to Local Rule 118 of the United States District Court for the District of Nevada.

### FACTS

The plaintiff, Sandra K. Hobbs, and the defendant/debtor, Terrance J. Hobbs, were divorced in Washoe County, Nevada's Second Judicial District Court on 19 July 1979. The plaintiff herein was also plaintiff in the divorce suit. The divorce decree includes this finding of fact: "That the parties have entered into a written Property Settlement Agreement, dated July 18, 1979, which provides for the division of community property of the parties, rights as to custody and support of the children, visitation rights, and payment of all debts and obligations." The decree and the "Property Settlement Agreement" (Agreement) both make provision for the support of $150.00 per month per child until emancipation, but neither document provides for the payment of alimony to the plaintiff.

Under the Agreement's subheading "5. *Community Debts*" the plaintiff agreed to assume financial responsibility for the payment of a note secured by a first trust deed on the former marital residence, now the sole property of plaintiff. The defendant

assumed payment of the note secured by a second trust deed on the house, and agreed to hold the plaintiff harmless for such payments. It is the debt evidenced by this second secured promissory note that the plaintiff seeks to have declared non-dischargeable.

At the 29 March 1983 trial of this complaint, the plaintiff presented evidence showing the second trust deed note was executed on 3 March 1978 and calls for 180 monthly payments of $180.00 per month. Pursuant to the divorce decree, the defendant made payments on the note beyond the date of his 30 March 1982 Chapter 7 petition and through July or August 1982; the plaintiff has made the payments since the defendant discontinued his, and the note is not now in default. Apparently, the debtor initially intended to reaffirm this debt, but later decided this would not be possible and he filed an amendment to schedule A–3 on 30 September 1982 to have the debt discharged.

■ A second issue presented by plaintiff's complaint is that the alleged agreement to reaffirm must be enforced by this Court. The issue was discussed very briefly in plaintiff's pre-trial statement without supporting authority, but not mentioned during post-trial oral argument. All that need be said in this regard is that an "involuntary reaffirmation" does not exist under bankruptcy law. 11 U.S.C. § 524(c). In any event, plaintiff presented no evidence of this agreement other than the fact that the debtor made a few post-petition payments on the note.

Plaintiff's testimony demonstrated that at the time the Agreement was negotiated and executed by the parties, the plaintiff did not ask for alimony payments, even though she wanted them, because she was advised by her divorce counsel that it was unlikely any would be awarded by the divorce court. The defendant confirmed that alimony was never discussed nor requested, that it was his understanding that the hold harmless agreement and assumption of the subject note was strictly a matter of property settlement, and that he never intended to pay alimony. There was no evidence that the hold harmless agreement was intended to supplement the monthly child support payments.

DISCUSSION

■ Since alimony, maintenance, and support is defined by federal bankruptcy law and not state law, House Rep. No. 95–595, 95th Cong., 1st Sess. 364 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787, bankruptcy courts have devised a variety of "tests" to be used in divining the true nature of the subject debt. *See Matter of Uhock,* 15 B.R. 695 (Bkrtcy.W.D.Mo. 1981); *In re Huggins,* 12 B.R. 850 (Bkrtcy. D.Kan.1981); and *In re Warner,* 5 B.R. 434 (Bkrtcy.D.Utah 1980). In this district, the test applied has been the "intent" test, which contemplates an examination of the operative divorce documents and any relevant extrinsic evidence to determine whether the parties intended the obligation to be in the nature of a property settlement or alimony, maintenance, or support. *Matter of Payne,* 13 B.R. 481 (Bkrtcy.D.Nev.1981). *See also Melichar v. Ost,* 661 F.2d 300, 303 (4th Cir.1981): "The proper test of whether the payments are alimony lies in proof of whether it was the intention of the parties that the payments be for support rather than as a property settlement."

■ The determinative time period is the time of the divorce decree and/or property settlement agreement, *In re King,* 15 B.R. 127 (Bkrtcy.D.Kan.1981). The "plaintiff's *current* need is an irrelevant consideration." *Matter of Jensen,* 17 B.R. 537, 539 (Bkrtcy. W.D.Mo.1982). The Court must also bear in mind that the "party asserting the nondischargeability of the debt bears the burden of proving that the debt is in the nature of alimony, maintenance or support." *In re Gabele,* 15 B.R. 221, 222 (Bkrtcy.N.D.Ohio 1981).

■ The parties have cited cases that have considered the question of hold harmless agreements on notes secured by the former martial residence. In *In re Farradino,* 14 B.R. 196 (Bkrtcy.D.Nev.1981), the court held such payments to be non-dis-

chargeable. However, unlike the present case, the divorce decree in *Farradino* provided for the payment of the mortgage "during the lifetime of wife, or until the encumbrance on the said home is paid in full, or until wife remarries, whichever occurs first." *Id.* at 197. In another case, the court also ruled the obligation to make the mortgage payments non-dischargeable based upon a number of factors, including evidence that the defendant realized the debt was something other than an ordinary obligation and that the payments were to be made through the clerk of the court. *In re Henry,* 5 B.R. 342, 2 C.B.C.2d 726 (Bkrtcy.M.D.Fla.1980). *In re Mineer,* 11 B.R. 663 (Bkrtcy.D.Colo.1981), held a similar debt to be dischargeable because there was no provision for the termination of the obligation upon the remarriage of the plaintiff or upon the children reaching majority. Other factors considered decisive by that court were the relative equality of the spouses' earning power at the time of divorce, and the obvious intent of the plaintiff to limit the amount of child support so as not to jeopardize her ability to claim the children as tax exemptions. What is most instructive and apparent from these and other cases dealing with dischargeability questions is that each case must be decided on its own peculiar facts and the intent of the parties. The present case is no exception. This is not to say that factors considered important by other courts in determining the intent of the parties are not useful, but that the evidence available in each case will differ widely.

No evidence was presented at trial respecting the relative earning power or prospective earning power at the time of the divorce. Child support was specifically and unambiguously provided for in the Agreement and included, in addition to the monthly cash payments, the requirement that the defendant provide medical and dental insurance for the children. The absence of any mention in the Agreement of alimony for the plaintiff cannot reasonably be interpreted as accidental.* Rather, this omission is entirely consistent with the testimony at trial, which showed that at the time of the divorce, neither party anticipated the payment of alimony to the former wife. Also, the note payments are not to end on the remarriage or death of the plaintiff, nor on the emancipation of the children. Finally, the hold harmless provision appears in the Agreement in the section dealing with community debts rather than the section relating to support. In short, plaintiff has not met her burden of showing that it was the intent of the parties at the time of divorce to consider the subject hold harmless agreement anything other than what the Agreement says it is: part of the division of community debts. In the absence of such proof, the Court must hold the debt dischargeable.

The foregoing shall constitute findings of fact and conclusions of law, pursuant to Rule 752 of the Rules of Bankruptcy Procedure. A judgment consistent with this opinion shall be entered concurrent herewith.

---

* Part of the Agreement's prefatory language reads: "... it is the mutual desire of the parties to this Agreement to make a permanent, complete, and final settlement *of all their property and legal rights of every and any nature whatsoever* ...." (Emphasis added.)