OPINION OF THE COURT
Anthony F. Bonadio, J.
The issue presented in this case is whether or not a debt owed to the Monroe County Department of Social Services (hereinafter petitioner or agency) by the respondent was discharged in bankruptcy.
The relevant facts are neither disputed nor complex. By order of this court dated January 21, 1964, the respondent was adjudicated the father of Angel T. Soto and Robert J. Soto, born out of wedlock to Margaret H. Woods. Mother and father lived together (with their children) for some time, but never married. The filiation order, which originally required the respondent to pay $15 per week per child was, on several occasions, modified by further orders of this court, including an order dated April 6,1966, which made the petitioner herein beneficiary of the orders in *43 volved, at least with respect to their support provisions.[1] On September 15, 1980, orders were entered in this court which, inter alia, required the respondent to pay $5 per week current support, and granted petitioner a judgment in the sum of $25,846.40, representing arrears on the child support orders. This judgment represents the debt in question.
On or about November 12,1981, Mr. Soto filed a petition in the Bankruptcy Court for the Western District of New York. This court’s 1980 judgment was listed in the appropriate debt schedule. While it appears that the agency filed a proof of claim, it did not file an objection to discharge of the debt or otherwise participate in the bankruptcy proceeding (although the Bankruptcy Court stayed its attempt to enforce the judgment). The respondent was ultimately released from “all dischargeable debts”.
In September, 1982, after the conclusion of the bankruptcy proceeding, petitioner advised the respondent that it intended to resume garnisheeing his wages in order to collect on the judgment. Respondent commenced this proceeding, by order to show cause, seeking a determination that this debt was discharged. The income execution was stayed pending a determination of dischargeability.
As I recently noted in Paynton v Kaplan (117 Misc 2d 137) subdivision (c) of section 523 of the Bankruptcy Code (US Code, tit 11) requires a creditor to demand a hearing in the Bankruptcy Court to determine the dischargeability of a debt owed to him but specified in section 523 (subd [a], pars [2J, [4], or [6]) (false pretenses; fraud, embezzlement and larceny; willful and malicious injury). Since the debt involved here is not included in subdivision (c) of section 523, this court shares with the Bankruptcy Court concurrent jurisdiction to determine the effect of a discharge (US Code, tit 28, § 1471, subd [b|; tit 11, §523, subd [c]; 3 Collier, Bankruptcy [15th ed|, par 523.15 [6]; Matter of Williams, 3 BR 401; State of New York v Wilkes, 41 NY2d 655; cf. Family Ct Act, § 451). *44 Section 523 (subd [a], par [5]) of the Bankruptcy Code provides, in relevant part, that debts in the nature of alimony or child support are nondischargeable only if they arise “in connection with a separation agreement, divorce decree, or property settlement”. This limiting language first appeared in the Bankruptcy Reform Act of 1978 (BRA) (Pub L 95-598), and significantly changed former section 17 (subd a, par [7]) of the Bankruptcy Act of 1898, from which section 523 (subd [a], par [5]) was derived: “Section 17a(7) was construed to apply to the common law liability involuntarily imposed upon the parent for support of a child. The provisions of Section 523(a)(5) are clear that liability for maintenance and support are dischargeable unless the liability arises in connection with a separation agreement, divorce decree, or property settlement” (3 Collier, Bankruptcy [15th ed], par 523.15 [2]).
Since neither party claims that the obligation here arose out of such an agreement, decree, or settlement, this debt is not excepted from discharge under section 523 (see Matter of Leach, 5 CBC2d 1091).
However, and as noted in Leach (supra) such a conclusion does not end our inquiry. Section 456 of the Social Security Act (US Code, tit 42, § 656) was amended, effective August 13, 1981, by subdivision (a) of section 2334 of the Omnibus Budget Reconciliation Act of 1981 (OBRA) (Pub L 97-35), which added a subdivision (b) to section 456: “(b) A debt which is a child support obligation assigned to a State under section 402(a)(26) is not released by a discharge in bankruptcy under title 11, United States Code.”
This 1981 amendment to section 456 — unlike the BRA language limiting dischargeable support obligations under section 523 (subd [a], par [5]) to those arising under a separation agreement, divorce decree or property settlement — represented no significant change in bankruptcy law. It merely reinstated, largely on policy grounds,[2] a former provision of the Social Security Act which was *45 repealed by Congress when it adopted the BRA (Pub L 95-598, tit III, § 328). So, for several years prior to the BRA, such debts were not dischargeable (see Matter of Williams v Department of Social & Health Servs., State of Wash., 529 F2d 1264; Matter of Spell, 650 F2d 375); under the BRA they were dischargeable until August 13, 1981 (see Matter of Glidden, 653 F2d 85; Matter of Spell, 650 F2d 375, supra). Since the respondent filed his petition in bankruptcy after the effective date of this amendment to section 456, this debt was not discharged (Matter of Leach, 5 CBC2d 1091, supra; Matter of Spell, 650 F2d 375, supra; Matter of Morris, 21 BR 816).
Having concluded that this debt is not dischargeable pursuant to subdivision (b) of section 456 of the Social Security Act (US Code, tit 42, § 656, subd [b]), we turn our attention to several arguments made by the respondent in support of his claim that the debt was discharged, none of which we find persuasive.

(1) Nature of the debt.

It is well settled that the dischargeability of a debt is determined by the substance of the debt, not its form (cf. Pepper v Litton, 308 US 295). Thus, it has been argued that, at least for bankruptcy purposes, the substance of the debt involved here is not one “actually in the nature of alimony, maintenance, or support” (US Code, tit 11, § 523, subd [a], par [5], cl [B]), but represents a debt arising from an “independent obligation of the Department to provide AFDC payments to all eligible individuals” {Matter of Williams u Department of Social & Health Serus., State of Wash., 529 F2d 1264, 1270, supra). While there are cases supporting such a claim (see, e.g., Hilliard v De Ciuceis, 202 Misc 197; Matter of Stephen M., 80 AD2d 664), the better view is the one expressed in Williams: “the Department’s payments * * * were substantially in lieu of the bankrupt’s support obligations” (529 F2d, at p 1270).

(2) Only debts specifically enumerated in section 523 of the Bankruptcy Code are dischargeable.

The respondent also suggests that since this debt does not fall within any of the subdivisions of section 523, it *46 must be dischargeable. At least one court has so held (Matter of Rowan, 5 CBC2d 1008; cf. Matter of Leach, 5 CBC2d 1091, 1096, supra).
While we agree with the court in Rowan (supra) that, with the adoption of the BRA in 1978, Congress intended to place all nondischargeable debts in section 523 of the code, the focus of its intent was primarily procedural, not substantive: “Thus, the elimination of miscellaneous exceptions to discharge found in other laws is not an attempt to eliminate exceptions to discharge entirely. Rather, the Committee have considered these other provisions and have attempted to regularize and bring together in one place, the bankruptcy code, the list of debts that are not included in the bankruptcy discharge. In a sense, then, the amendments made by title III to eliminate miscellaneous exceptions to discharge in other laws of the United States are conforming amendments to carry out the discharge policy of proposed title 11.” (H R Rep No. 95-595, p 286 [in US Code Cong & Admin News, 1978, vol 5, p 6242]; reprinted in 9 Brk L ed, § 82:12, p 282.)
Moreover, Congress in fact amended section 523 to make support obligations assigned to a State under the Social Security Act nondischargeable. Section 2334 of the OBRA, which amended section 456 of the Social Security Act, also amended section 523 (subd [a], par [5], cl [A]) by removing such support obligations from the general rule of dischargeability by assignment. By amending both section 456 of the Social Security Act (US Code, tit 42, § 656) and section 523 (subd [a], par [5], cl [A]) of the Bankruptcy Code, Congress clearly intended to make such assigned support obligations nondischargeable in bankruptcy. That the amendment to section 523 (subd [a], par [5], cl [A]) is not applicable here in view of our holding that section 523 (subd [a], par [5]) itself is inapplicable appears largely attributable to Congress’ failure to consider the effect of the 1978 BRA’s language limiting section 523 (subd [a], par [5]) to debts arising from a property settlement, divorce decree or separation agreement; that is, due to a mere inadvertence or oversight (see Matter of Adamo, 619 F2d 216).[3]_

*47
(3) Equity demands that the respondent be given a fresh start.

Relying on cases like Matter of Warner (5 BR 434) and Matter of Nelson (16 BR 658) — in which the court, after determining that a debt was actually in the nature of child support or alimony, nevertheless discharged the debt on the ground that, since the former spouse and/or child was not in need of such funds at. the time dischargeability was determined, the Bankruptcy Code’s “fresh start” goal would be frustrated — respondent asks that we balance petitioner’s need to collect its judgment with his inability to pay. We decline to do so. In our opinion, once a debt is determined to be a support obligation, such a balancing test is inappropriate (see Matter of Jensen, 17 BR 537; cf. Wetmore v Markoe, 196 US 68). Moreover, section 523 (subd [a], par [8], cl [B]) of the Bankruptcy Code provides that certain educational loans are not dischargeable in bankruptcy unless excepting such a debt from discharge would impose an undue hardship on the debtor. No comparable provision appears in section 523 (subd [a], par [5]) or in section 402 (subd [a], par [26]) (US Code, tit 42, § 602, subd [a], par [26]) or 456 of the Social Security Act.
Accordingly, I hold, for the reasons discussed above, that this debt was not discharged in bankruptcy, pursuant to subdivision (b) of section 456 of the Social Security Act. The order, to be submitted by petitioner on notice, shall contain a provision vacating the stay previously imposed.

. For a more detailed discussion of the public assistance aspects of this case, see Matter of Williams v Department of Social & Health Sen's., State of Wash. (529 F2d 1264; cf. Social Services Law. § 348; Social Security Act, § 402, subd |a|, par 126]; US Code, tit 42. 8 602. subd la], par ]26]).

. “I AI parent’s obligation to support his child is not one that should be allowed to be discharged by filing for bankruptcy, and * * a child support obligation assigned to a State as a condition of AFDC eligibility should not be subject to termination in that way.” (S Rep No. 97-139, 97th Cong, 1st Sess, p 523 [19811; see, also, HR Rep No. 97-208, *45 97th Cong, 1st Sess, p 986 [19811 [in US Code Cong & Admin News, 1981, vol 2, pp 790, 1348J.)

. Rules of statutory construction support such a conclusion. (See, e.g., 73 Am Jur 2d, Statutes, §§ 144-146, 180, 186-192, 257.) And, since section 402 (subd [a], par [26]) *47 provides that a State plan for AFDC reimbursement require an applicant for or recipient of public assistance to not only assign support rights but also co-operate with the State in establishing the paternity of out-of-wedlock children, and obtaining support for them, it seems clear that Congress did not intend to treat applicants/recipients differently solely on the basis of their marital status.