**In the Matter of Benjamin David ANDES a/k/a Dave Andes d/b/a Dave Andes Plumbing Co., Inc., Debtor.**

**Sally Sue ANDES, Plaintiff,**

v.

**Benjamin David ANDES, Defendant.**

**Bankruptcy No. 85–02891–3.
Adv. No. 85–0669–3.**

United States Bankruptcy Court,
W.D. Missouri, W.D.

Aug. 17, 1987.

---

Dorothy Rivette, Legal Aid Society of Western Missouri, Kansas City, Mo., for plaintiff.

Ralph Monaco, Thayer, Bernstein & Bass, P.C., Kansas City, Mo., for defendant.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL DECREE THAT DEFENDANT'S INDEBTEDNESS TO PLAINTIFF IN THE SUM OF $36,000 IS NONDISCHARGEABLE IN BANKRUPTCY AND JUDGMENT FOR THE SAME SUM PLUS INTEREST AT THE CONTRACT RATE OF 12% FROM AUGUST 1, 1982, FOR PLAINTIFF AND AGAINST DEFENDANT

DENNIS J. STEWART, Chief Judge.

This court previously entered its final judgment declaring the defendant's indebtedness to plaintiff in the principal sum of $36,000 to be nondischargeable in bankruptcy as an obligation which was properly to be classified as one of support or maintenance of a former spouse within the meaning of section 523(a)(5) of the Bankruptcy Code, which excepts such obligations from dischargeability in bankruptcy. The decree was entered on February 18, 1986, and was based in material part on this court's finding that the debtor had testified in response to his counsel's questions that the award was to serve the function of supplying a residence for the plaintiff. In pertinent part, the bankruptcy court's findings of fact and conclusions of law were as follows:

"The dissolution court made the award in the following pertinent language:

'The ... Thirty–Six Thousand Dollars ($36,000.00) due WIFE shall be evidenced by a promissory note executed by HUSBAND and secured by third deed of trust on the real estate described in Schedule "A", such note to provide for payment in full on or before August 1, 1982, or upon sale of the real estate described in Schedule "A", whichever first occurs, with no interest thereon until due and interest of twelve percent (12%) per annum from and after the due date. Such note and deed of trust shall be delivered to the escrow agent designated by the parties at the same time the quitclaim deed is delivered by WIFE.'

"According to the testimony which was adduced in the hearing of this action, the plaintiff had no job and no income. Additionally, she was suffering from severe nervous and psychological disorders, which limited the type of employment which she could obtain, and lack of any schooling or training which would be sufficient to obtain a job involving skill or learning. The testimony respecting the debtor's financial ability as of the date of the dissolution of the parties' marriage, insofar as it is reliable and credible, does not demonstrate a much greater ability to pay than that of the plaintiff if the amount which has already been paid to plaintiff by him is figured in the calculus. The terms and provisions of the separation agreement, moreover, do little to convey the parties' or the state dissolution court's intention as to whether the award of $36,000 was intended to be a nondischargeable award of support and maintenance or a dischargeable division of property. And the uncontradicted testimony heard in this action shows that, as of the date of the dissolution, custody of the children of the marriage was awarded to the debtor. The fact that, as of the date of the hearing in the action at bar, one of the children was emancipated and the other was in the custody of the mother may not be considered by this court in determining whether the state court award was one of maintenance or support. The authorities are clear on that issue that it is the financial status of the parties as of the date of dissolution which controls. *In re Williams*, 703 F.2d 1055, 1057 (8th Cir.1983); *In re Hobbs*, 30 B.R. 586, 588 (Bkrtcy. D.Nev. 1983); *Matter of Jensen*, 17 B.R. 537, 540 (Bkrtcy. W.D.Mo.1981 [1982]); *In re Harrell*, 754 F.2d 902, 906–7 (11th Cir. 1985).

"The plaintiff's uncontradicted testimony was to the effect that she used the awards initially paid her by the defendant to purchase residential real property and improve it—an endeavor which did not significantly aid her financial condition inasmuch as she ultimately sold the property for less than she paid for it. She was unskilled at the time of entry of the state court dissolution decree and

suffered psychological disorders which produced 'nervous breakdowns' and impaired her ability to be employed. Virtually her only experience in the market place has been as a waitress or a barmaid, work which she has not been able to sustain and which she has not found to be very remunerative. On the other hand, it cannot be demonstrated that the debtor had any significant wealth on the date of dissolution of the marriage which cannot be traced into assets currently possessed by him. *On direct examination of the debtor by his own counsel, however, he clearly stated that the intended function of the award in controversy was that of providing a residence for the plaintiff.*" (Emphasis added.)

The defendant appealed the decree and judgment of this court to the district court, asserting that the defendant has made no such admission in his testimony. After receiving the transcript of the hearing which was held in this court, the district court concluded that there was no such testimony in the record of the hearing held in this court and consequently remanded the action to this court with the following instructions:

"Appellant's testimony is, in fact, inconsistent with the bankruptcy court's findings and somewhat at odds with the agreement itself. The agreement states that the $36,000 was partial compensation for appellee's interest in commercial property; the promissory note for $36,000 was *secured* by a deed of trust on the marital residence. This does not comport with appellant's testimony, which, on the whole, leaves the impression that the $36,000 was to compensate appellee for her share of the marital residence. To the extent that this finding is reflected in the bankruptcy court's decision, I have no quarrel with it. What is key to the decision, however, is not the *source* of funds for the payment, but the *function* the payment was intended to serve. The bankruptcy court found, based specifically upon appellant's testimony, that the function of the payment was to enable appellee to purchase a home for herself, thus permitting the

conclusion that the debt was nondischargeable. *See, e.g. Poolman v. Poolman,* 289 F.2d 332, 335 (8th Cir.1961) (obligation to maintain and support a family includes obligation to keep a roof over its head). In point of fact, however, appellant did not so testify.

"What remains to be seen is whether the decision can be salvaged notwithstanding the absence in the record of appellee's (sic) 'admission.' .... In this instance, the absent 'admission' is the specific linchpin of the bankruptcy court's order; without it, I do not know what the bankruptcy court would have decided. Since I am not permitted to substitute myself for the bankruptcy court in that regard, I must remand the case for further proceedings.

\* \* \* \* \* \*

"When, as here, the remaining findings are inadequate to permit the court to perform its appellate review function, I have no choice but to remand.

"For the foregoing reasons, it is accordingly

"ORDERED that the above-styled case be remanded for further proceedings consistent with this order."

On remand, therefore, this court interprets the instructions of the district court to compel it to make findings which are more complete and which, according to the governing law, merit the granting of relief in favor of one party or the other. This court is impelled to commence with an explanation for the "absent admission" referred to by the district court.

### The defendant's "admission"

This court, in issuing its initial decree and judgment, failed to quote from the record of the hearing the particular testimony which it believed to be accurately summarized or paraphrased in its findings of fact and conclusions of law. That testimony commences on page 35 of the transcript and is to the following effect:

"Q (by Mr. Biagioli) And what was your understanding of that agreement as to how those two parts of the marital

settlement agreement affected your obligations to pay her?

A. Such as the money she got when we got divorced?

Q. Yes.

A. I had to borrow to pay her. She got $750 a month maintenance. The $36,000 was actually $40,000 but we had made a settlement because of a raing that was missing of mine so she automatically took off $4,000 off the $40,000. The $36,000 was supposed to be paid after I sold our home.

Q. *And that was to pay her an interest in that home?*

A. *That was to pay the interest in the home.*

 \* \* \* \* \* \*

Q. All right. So what happened to the house?

A. The Bank of Jacomo took it back.

Q. Did you have $36,000 cash money to pay her yourself?

A. No, sir.

Q. Did you understand that $36,000 was to partially compensate her for her interest in the marital property?

A. Yes." (Emphasis added.)

■ The testimony of the debtor was thus clear to the effect that the $36,000 was to serve as compensation to the plaintiff for her giving up her interest in the residential property. This court has some difficulty in accepting the conclusion—or implication—that this fact is of no consequence; that the character or function of the award for the purpose of determining dischargeability *vel non* is determined by what it is intended to be spent for in the future.[1] It would generally seem nearly—

if not fully—axiomatic that compensation for giving up a residence—or other necessity of life—should itself be regarded as the equivalent of that necessity. The federal courts, including our own court of appeals, in *In re Williams*, 703 F.2d 1055 (8th Cir. 1983), appear to recognize this wholly fair principle in holding that awards made which are attributable to liabilities for necessaries *which may have been completely consumed* at the time of the dissolution decree are to be regarded as nondischargeable maintenance.[2] " 'Provisions (in a dissolution decree) to pay expenditures for the necessities and ordinary staples of everyday life' may reflect a support function" even when they are provisions to hold the other spouse harmless for liabilities *incurred in the past.* 703 F.2d at 1057, quoting *Matter of Jensen*, 17 B.R. 537, 540 (Bkrtcy. W.D.Mo.1982). Our district court has, further, previously affirmed a decision of this court in *Matter of Spurgeon*, Adversary Action No. 85–0242–SW (Bkrtcy. W.D.Mo. Sep. 20, 1985), affirmed, —— F.Supp. ——, Civil Action No. 85–5160–CV–S (W.D.Mo. Jul. 2, 1986), holding that a "hold harmless" agreement to pay for medical services entirely consumed in the past was nondischargeable support.[3] Accordingly, this court continues to believe that the defendant's above-quoted statement that the $36,000 was intended to compensate plaintiff for her interest in the family home was a statement that the award had an intended support function. This court did not, as the district court stated in the above quoted portion of its opinion, find that "the function of the payment was to enable appellee to purchase a home for herself." Rather this court merely

---

1. If this rule were generally to be accepted, obligations for past due alimony, maintenance or support would be dischargeable, as would most "hold harmless" obligations. The cases, without exception, however, hold to the contrary.

2. The *Williams* decision, for instance, involved, in part, attorney's fees for services which had been performed long before the award made by the court. The services for which the fees were awarded were, in fact, performed prior to the award of the dissolution court. And the *Williams* case cited with approval the prior decision of this court in *In re Jensen*, 17 B.R. 537 (Bkrtcy.W.D.Mo.1982), in which this court held obligations to pay for debts formerly incurred to be nondischargeable in bankruptcy.

3. In that case, the nondischargeable award was, in part, for dental services rendered prior to the dissolution decree and paid for by the debtor's former spouse. Thus, as in the case at bar, the award was in the form of compensation for a past necessary. The earmarking of the payment for use to purchase a necessary in the future was not a consideration in making the award.

stated that the defendant's testimony had been to the effect "that the intended function of the award in controversy was that of providing a residence for the plaintiff." In light of the above principles, this appears to have been a correct statement.

█ Even if, however, as the district court suggests, the award must be earmarked for a support purpose, rather than merely compensation for past support, the findings which have been previously made by this court furnish satisfactory evidence for the nondischargeability of the award. This court has some difficulty in accepting the conclusion that the source of the award is of no consequence.[4] According to this court's understanding of the law, it presumes that the proceeds of the sale of a homestead continue to constitute homestead property themselves, provided that, within a reasonable time, they are reinvested in other residential property. "(T)he portion of the proceeds to which (one) is entitled is exempt from creditors' demands (i.e., retains its character as homestead property) ... until the debtor has, for an unreasonable time, failed to invest it in another homestead." 40 Am.Jur.2d *Homestead* section 48, p. 148 (2d ed.1968). And, in the case at bar, it was plaintiff's uncontradicted testimony that she in fact purchased a residence of her own after the dissolution.[5] Because of defendant's failure to pay the $36,000 on or before August 1, 1982, according to the separation agreement, plaintiff had to use other monies to make the purchase.[6] It seems quite doubtful to this court that the compensation for giving up a roof over the plaintiff's head can under such circumstances lose its character as cash in lieu of a homestead. Thus,

even if the correct standard is that enunciated by the district court—"What is key to the decision ... is not the *source* of funds for payment but the *function* the payment was intended to serve"[7]—the above recounted evidence, which shows that it was plaintiff's intention to purchase a new home with the proceeds—a new home of about the same value as the $36,000 award[8]—shortly after dissolution, provides a sufficient basis for holding the award to be one of nondischargeable maintenance.

*Other evidence and findings supporting nondischargeability*

█ As this court reads the district court order of remand, this action was remanded for the purpose of having this court make additional findings of fact or conclusions of law, not for the purpose of a new hearing. The hearing was held to completion before the appeal was taken, and the district court did not allude to any deficiency in the evidence, but only a deficiency in the findings. The district judge stated explicitly that, because he could not put himself in the place of the bankruptcy court, remand was the only alternative, in order for it first to be seen what the bankruptcy court's decision would be in light of the considerations stated by the district court. In view of those considerations, when the findings of fact previously made by the court contained the statement of the defendant that the award was for the purpose of compensating plaintiff for her interest in the residence, this court believes that those findings were sufficient to establish nondischargeability. A debtor's "obligation to hold his wife harmless on the ... loan securing the family residence might be considered non-dischargeable de-

---

4. See note 3, *supra.* If a party's obligation to another is based upon his disposition or appropriation of a necessary of another, it would seem that the obligation is on account of a necessary.

5. See tr. 8 of the hearing of January 3, 1986, in which the plaintiff states that she received one lump sum award of $32,125, which the defendant paid; that she was to additionally receive maintenance of $750 per month for a year; and that the $36,000 was to be paid by August 1, 1982, or bear interest at 12% per annum there-

after. On tr. 9, she further states that, with the $23,000 she bought a house in Belton, Missouri; and that it was her belief and understanding that the $36,000 was designed to be paid to her when the $750 per month had run out "for maintenance ... and that is why it was to be paid after the official maintenance terminated."

6. See note 5, *supra.*

7. Cf. note 4, *supra.*

8. See note 5, *supra.*

soite the existence of separate and distinct support provisions in the property settlement agreement." *Stout v. Prussel*, 691 F.2d 859, 861 (9th Cir.1982).[9] In *Poolman v. Poolman*, 289 F.2d 331, 335 (8th Cir.1961), similarly, the lone fact that the payment was allocable to a necessary was sufficient to make the award nondischargeable, even though "the obligation has become unduly burdensome."[10]

 Even, however, if the finding that the award was compensation for a vacated residence was insufficient to make the award nondischargeable, there are other findings which have the effect of making it nondischargeable. The detailed findings which this court previously made relative to the comparative earning power of the parties at the time of the dissolution decree shows a distinct disparity in earning power—if not in actual earnings—and shows that defendant was regarded as having the burden of support on this basis alone.[11] And, further, it must be found—and emphasized[12]—that plaintiff's clear testimony that the agrred purpose of the award was, according to the mutual intent of herself and defendant, to serve a support function is sufficient to support a finding was one of nondischargeable support or maintenance.[13] This is so even though it can fairly be said that her testimony in this regard was contradicted by that of the defendant. For, from the appearance and demeanor of the respective witnesses, her testimony was the more credible. This finding is uniquely within the power of the bankruptcy court. *In re Windle*, 653 F.2d 328, 331 (8th Cir. 1981) ("In the case the District Court bore the same relationship to the Bankruptcy Court as we usually do to the District Courts—it sat as an appellate tribunal, not as a finder of fact. The deference owed by appellate courts to finders of fact is at its highest where the issue turns on the resolution of a direct conflict between live witnesses.") These principles are particularly applicable in a case such as that at bar, in which the discretion of the bankruptcy courts has been given a particularly wide ambit. Ordinarily, the courts "do not disturb a dischargeability ruling by a bankruptcy judge unless it is 'a gross abuse of discretion.'" *Stout v. Prussel, supra,* at 861.

Accordingly, for the foregoing separate and independent reasons, it is hereby

ORDERED, ADJUDGED AND DECREED that the defendant's indebtedness to plaintiff in the sum of $36,000 be, and it is hereby, declared to be nondischargeable in bankruptcy. It is further, accordingly,

ADJUDGED that plaintiff have and recover the same sum from defendant plus interest at the rate of 12% per annum from August 1, 1982.

---

9. In the *Stout* case, the bankruptcy court had gone the other way, holding the obligation to be dischargeable. But, in view of the court appeals' statement to this effect, this only shows the wide latitude to be granted to the bankruptcy court in this regard.

10. The district court determination seems partly to be based on the current possible inability of the defendant to make the rather large payment. But the bankruptcy courts may not balance the plaintiff's right to nondischargeable maintenance against the debtor's right to rehabilitation. It is the comparative financial abilities of the parties at the time of dissolution which alone is relevant. See, e.g., *In re Williams*, 703 F.2d 1055 (8th Cir.1983).

11. Thus, it was found that the plaintiff not only had not been able to keep a job, but that her employment prospects were dimmed by her nervous disorders and her lack of job experience and training of any caliber. Although it was not shown that the defendant had great financial ability at the time, his financial ability was found to be distinctly greater than hers, and his earning power was clearly greater.

12. The decision at bar may be based on this factor alone, even if all of the other facts cited herein are found to be an insufficient ground for decision.

13. Thus, on page 9 of the transcript of the hearing, she stated that "the way I understood it that it was for mylivelihood" (referring to defendant's duty to pay the $36,000). Further, she adverted to the fact that the $36,000 was due to be paid right after the 1–year duty to pay $750 per month would run out as supporting her understanding that it had been mutually agreed that the award would be one of maintenance.