In re Jonnie W. BUCKALLEW and Lianne A. Hotte–Buckallew, Debtors.

Brenda FORD, Plaintiff,

v.

Jonnie W. BUCKALLEW, Defendant.

Bankruptcy No. 93–30457.
Adv. No. 94–3004.

United States Bankruptcy Court, W.D. Missouri.

Oct. 3, 1994.

---

J. Kevin Checkett, Checkett & Pauly, Carthage, MO, for plaintiff.

J. Gregory Powell, Roberts, Fleischaker, Williams & Powell, Joplin, MO, for defendant.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

This adversary proceeding was filed by Brenda Ford ("plaintiff"), the former wife of debtor/defendant Jonnie W. Buckallew ("debtor")[1]. Plaintiff claims a judgment debt incurred during the parties' divorce in the amount of $13,000.00 is nondischargeable. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). For the reasons set forth below, I find that the debt is dischargeable.

## FACTUAL BACKGROUND

Plaintiff and debtor were married in 1966. They had two sons born in 1967 and 1968 respectively. The parties were granted a divorce on January 14, 1983, in the Seventh Judicial District Court, County of Natrona, State of Wyoming (the "state court"). Plaintiff and debtor entered into a Property Settlement Agreement (the "Agreement") which provided that plaintiff would have custody of the minor children. Each of the parties had stock or pension plans from their employer, hers being invested in Texaco stock, and his in an ERISA-qualified plan. The Agreement awarded plaintiff the Texaco stock, but made no mention of the debtor's pension plan.[2] However, plaintiff did not dispute that debtor's pension plan was awarded to him as part of the property settlement agreement.

The dispute here relates to the marital residence. At the time of the dissolution the parties estimated equity of $30,000.00 in such residence, after reduction for the mortgage. They agreed that plaintiff would reside with the children at such residence, that the house would be put up for sale when the youngest child graduated from high school, and that out of the proceeds the debtor would be paid $15,000.00.[3]

Both debtor and plaintiff testified that the two children were spending more time with debtor immediately following the divorce, that plaintiff had purchased a separate residence, and that debtor was living in the family residence with the children. They filed a Joint Petition for Modification of Decree of Divorce on August 17, 1983. That modification essentially flipped the parties' rights and duties with respect to the residence, such that debtor would remain in the house with the children, would put the house up for sale, and would pay plaintiff $15,000.00

---

1. The Court wishes to acknowledge the participation of J. Gregory Powell, Esq., as counsel to the debtor on a *pro bono* basis.

2. Plaintiff worked for Texaco until 1982. Since then she has worked for Amoco Oil Company, both in Wyoming and in Texas, where she now lives.

3. The 1983 Agreement includes the following:
    12. The parties agree that the Plaintiff may retain possession and use of the parties' residence located at 3801 East 19th Street, in Casper, Wyoming until such time as the youngest of the parties' minor child [sic] completes his high school education. At such time, the parties shall place the said residence for sale on open market. Upon the sale of the said residence, the Plaintiff shall thereupon pay to the Defendant [debtor here] the sum of fifteen thousand dollars ($15,000.00), which sum shall be taken from the proceeds of the sale of the parties [sic] residence. Further, the Plaintiff may retain for her own use and benefit, all other sales proceeds resulting from the sale of said residence.
    Debtor's Exh. # I.

out of the proceeds at or before the youngest child completed high school.[4] *Id.* Debtor resided in the marital home until November of 1986. He attempted to sell the house for over a year, but the Casper, Wyoming economy had been weakened by the sudden decrease in oil prices, and he received only one oral offer which plaintiff refused to accept. Debtor lost his job in August of 1986. He offered the house to plaintiff at that time, but she had purchased another home. Debtor was unable to make the mortgage payments, so the bank foreclosed in November of 1986. The younger son Kevin was a senior in high school at this time. Debtor testified that he made arrangements for Kevin to live with relatives and friends until such time as he graduated in June of 1987.

Prior to being laid off from his job as a supervisor with a highway construction company, debtor became vested in the company's profit sharing/pension plan. Debtor received $57,000.00 from the profit sharing/pension plan sometime after February 26, 1987.

On January 30, 1987, plaintiff filed in state court a Petition for Order to Show Cause why debtor should not be held in contempt of court for failure to pay her $15,000.00 from his profit sharing/pension plan pursuant to the August 17, 1983 "Order." Pl. Exh. # 7. An Order to Show Cause issued that same date. Pl. Exh. # 6. On February 26, 1987, the state court entered an Order awarding judgment against defendant in the amount of $13,000.00 together with interest at ten percent per annum from the date of the Order.[5] Pl. Exh. # 4. The ordering portion of the February 26, 1987, Order reads as follows:

"THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Plaintiff be, and hereby is, awarded judgment against the defendant in the amount of $13,000.00 together with interest accruing thereon pursuant to statute in the amount of 10% per annum from the date of entry of this Decree.

Thus, while judgment was entered against debtor, he was not specifically ordered to pay such judgment from the pension funds. Debtor did not pay the judgment.

On April 3, 1987, the state court entered an Order to Show Cause why debtor "should not be held in contempt of this Court for failure to abide by the February 26, 1987, 'Order.'" Pl. Exh. # 5. The state court judge set a hearing on the Order to Show Cause for April 14, 1987. Though Debtor received a summons, he did not appear at that hearing. On April 21, 1987, the state court judge entered a Contempt Order directing any sheriff in any county in the State of Wyoming to arrest debtor and hold him until he could be brought before the court for a hearing for contempt. Prior to said hearing, debtor could purge himself of contempt by posting a bond in the amount of $13,250.00.[6] *Id.* Debtor testified that he left Casper, Wyoming on April 13, 1987, because he had a job interview in Springfield, Missouri. Debtor has not resided in the State of Wyoming since 1987. Debtor filed a Chapter 7 bankruptcy petition on November 1, 1993.

Plaintiff brings this dischargeability Complaint in three counts. In Count I plaintiff contends the debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(5)(B) because the $13,000.00 payment was actually in the nature of maintenance to allow plaintiff to purchase a new home. In Count II plaintiff contends that debtor has caused a willful and

---

4. The Modification reads in part as follows:

    3. The defendant shall have as his sole and exclusive property the parties' marital residence at 3801 East 19th Street, Casper, Wyoming, subject to any mortgage thereon, which he shall assume and save Plaintiff harmless therefrom. Plaintiff shall execute and deliver to Defendant a Quitclaim Deed for said property and deliver the same to the Defendant upon his payment to her of Fifteen Thousand Dollars ($15,000.00) for her interests in the same, said sum to be paid at or before the completion of high school by the parties' youngest son and to come from the proceeds of the sale of said residence if the Defendant cannot otherwise pay said amount at such time.

5. The original obligation had been reduced by $2000.00.

6. The state court awarded plaintiff $250.00 for her attorney's fees.

malicious injury to plaintiff rendering the debt nondischargeable pursuant to 11 U.S.C. § 523(a)(6). In Count III plaintiff contends that the debt for $13,000.00 is nondischargeable because it is for a fine or penalty pursuant to 11 U.S.C. § 523(a)(7). I will deal with each Count in turn.

## DISCUSSION

■ Section 523(a)(5) of the Bankruptcy Code excepts from discharge debts which are "actually in the nature of alimony, maintenance, or support." [7] The party objecting to the dischargeability of a debt under section 523(a) bears the burden of proving each element of the objection by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); Fed.R.Bankr.P. 4005. Whether an obligation is in the nature of support or a property settlement is a matter of federal bankruptcy law. *Williams v. Williams (In re Williams),* 703 F.2d 1055, 1056 (8th Cir.1983). This Court is not bound by the categorization of the award contained in the state court dissolution decree or by the state law definition of the award. *Stamper v. Stamper (In re Stamper),* 131 B.R. 433, 435 (Bankr.W.D.Mo. 1991); *Telgmann v. Maune (In re Maune),* 133 B.R. 1010, 1014 (Bankr.E.D.Mo.1991). Instead, the function the award was intended to serve is determinative of its dischargeability. *Maune* at 1014.

■ In determining the award's intended function, the court should first look to the language of the Decree itself. *In re Peterson,* 133 B.R. 508, 512 (Bankr.W.D.Mo.1991). *Grundy Nat'l Bank v. Frank (In re Frank),* 103 B.R. 771, 773 (W.D.Va.1989). The Order

for Modification of Decree of Divorce states that debtor will pay to plaintiff $15,000.00 for her interest in the marital home. Pl. Exh. # 3. The original Property Settlement Agreement dealt with the marital home by providing that plaintiff would reside there until such time as the younger son completed his high school education. Debtor's Exh. # I. Plaintiff was then to sell the home and pay to debtor $15,000.00 from the proceeds of the sale. The mortgage on the home was $64,314.42 at the time of the divorce. Debtor's Exh. # E. Debtor testified that the parties estimated the equity in the home to be $30,000.00 on January 14, 1983. Plaintiff contends that the award of $15,000.00 was in the nature of maintenance because the award was necessary to enable her to purchase a new home. She cites three cases for the premise that an award of one-half the equity in the marital home is nondischargeable if the award was specifically to allow the purchase of a new home. In *Andes v. Andes (In re Andes),* 78 B.R. 968 (Bankr.W.D.Mo.1987), the Court held that evidence showing it was the wife's intention to purchase a new home with the proceeds of an award shortly after the dissolution provides a sufficient basis for holding the award nondischargeable. *Id.* at 973. Factually, this case is distinguishable from *Andes,* however. First, Brenda Long was earning a salary commensurate with debtor's salary at the time of the divorce. Second, the Agreement and the modification to the property settlement agreement provided that the marital home would not be sold, nor the equity divided, until such time as the younger son, Kevin, completed his high school education. Brenda Long purchased her new home in 1983, four years before Kevin would complete his high school education.

---

7. Section 523(a)(5) of the Bankruptcy Code provides as follows:

(a) A discharge under section 727, 1141, 1221(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . . . .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce

decree or other order of a court of record, determination made in accordance with State or territorial law by a government unit, or property settlement agreement, but not to the extent that—

. . . . .

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

11 U.S.C. § 523(a)(5).

In *Holcer v. Earl*, 55 B.R. 12 (Bankr. W.D.Mo.1985), the Court held that debtor's obligation to pay his former wife $60,000.00 when he allowed the mortgage on the marital home to be foreclosed could not automatically be categorized as a nondischargeable debt. *Id.* at 16. The Court found that while an award made "'to keep a roof over heads' is nondischargeable support," if debtor is also required to make substantial monthly maintenance payments sufficient to provide housing, the award will be dischargeable in bankruptcy. *Id.* (quoting *Poolman v. Poolman*, 289 F.2d 332, 335 (8th Cir.1961)). *Poolman* was also a case where the debtor agreed to make the mortgage payments on the marital home which was awarded to the wife. When debtor defaulted on his obligation, the wife was forced to borrow money to make the payments in order to preserve a home for herself and her three children. *Id.* at 333. She then obtained a judgment in state court for the arrearage and garnished debtor's wages. The Eighth Circuit held that the obligation to support and maintain a family includes the obligation to keep a roof over their heads. *Id.* at 335. These two cases are also distinguishable. Brenda Long did not reside in the marital home at the time of the foreclosure. Both she and the debtor had agreed in the Joint Petition for Modification of the Decree of Divorce that debtor would have joint custody of the two children, that the children would reside with debtor in the marital home, and that debtor would pay plaintiff $15,000.00 for her interest in the home in exchange for her execution and delivery of a Quitclaim Deed. Pl. Exh. # 3. The Order for Modification of Decree of Divorce is, thus, very clear that this obligation was intended by the parties to be a division of property. As such, I find that debtor's obligation to pay plaintiff $13,000.00 is a dischargeable debt pursuant to 11 U.S.C. § 523(a)(5)(B), and I find in favor of debtor as to Count I of the Complaint.

Typically, debts arising out of dissolution proceedings are considered under section 523(a)(5). In this case, however, apparently because plaintiff obtained a Contempt Order in Wyoming, she also asked that the debt be found nondischargeable under sections 523(a)(6) and (7). Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" 11 U.S.C. § 523(a)(6). Section 523(a)(7) excepts from discharge a debt which is: (1) a fine or penalty; (2) payable to and for the benefit of a governmental unit; and (3) not compensation for actual pecuniary loss. 11 U.S.C. § 523(a)(7).

The mere failure to pay an obligation cannot be a willful and malicious injury in and of itself. Instead, Section 523(a)(6) applies to conduct, apart from nonpayment, which is willful and malicious. 11 U.S.C. § 523(a)(6); *Barclays American Business Credit, Inc. v. Long (In re Long)*, 774 F.2d 875 (8th Cir.1985); *Jones v. Hartley (In re Hartley)*, 75 B.R. 165 (W.D.Mo.1987), *rev'd*, *Hartley v. Jones*, 869 F.2d 394 (8th Cir.1988), *vacated by*, 874 F.2d 1254 (8th Cir.1989) (en banc). This debt arose because of the modification of a property settlement agreement. Plaintiff does not contend, nor could she, that debtor's conduct was willful and malicious in the modification proceeding since it was a joint stipulation. Thus section 523(a)(6) is inapplicable.

Section 523(a)(7) is applicable to contempt orders, if the contempt order resulted in a fine or penalty imposed to uphold the dignity of the Court. *Colton v. Corbly (In re Corbly)*, 61 B.R. 851, 856 (Bankr. D.S.D.1986); *Thruway Messenger Serv. v. Marini (In re Marini)*, 28 B.R. 262, 265–66 (Bankr.E.D.N.Y.1983). It is well recognized that contempt orders can issue for one of two purposes: (1) to uphold the dignity of the Court; or (2) to aid in collection efforts. *Marini* at 265–66. If the purpose of the contempt order is to uphold the dignity of the Court it follows that it is the Court, and not the creditor, which is the injured party. Section 523(a)(7) specifically deals with that type of injury by excepting the fine or penalty imposed from discharge. 11 U.S.C. § 523(a)(7). However, if the purpose of the

contempt order is to aid the creditor in the collection of a debt, section 523(a)(7) does not apply. *Corbly* at 857; *Marini* at 265.

 Thus, the issue turns on the purpose of the contempt order. The determining factor is whether the bond is compensatory and primarily for the benefit of the creditor, or whether the bond was intended to be primarily for the benefit of the government. *US Sprint Communications Co. v. Buscher*, 89 B.R. 154, 156 (D.Kan.1988). The facts and circumstances of each case must be examined to determine the true nature of the debt. *Corbly*, 61 B.R. at 857. *See also, Gedeon v. Gedeon*, 31 B.R. 942, 945 (Bankr. D.Colo.1983). Here, the state court first awarded judgment against the defendant for $13,000.00, then held him in contempt and provided he could purge the contempt by posting a bond in that amount plus attorney's fees. No reference was made to a fine or penalty anywhere in the state court orders. No sum was labeled as a fine for violation of any such orders. I find that the bond was intended to compensate plaintiff for pecuniary loss, thus, section 523(a)(7) is not applicable to this debt. Therefore, I find in favor of the debtor as to Counts II and III.

For all of the above reasons, I find that the debt to plaintiff is dischargeable. An Order in accordance with this Memorandum Opinion will be entered this date.

One final point. The parties' lives since their divorce have been marred by tragedy. Both suffered from the unfortunate death of one of their sons. And, while insignificant by comparison, the debtor has certainly had his share of financial problems since the loss of his job and the drop in real estate values in 1986. The less these parties' lives are entangled with each other, the more opportunity they will have to lead positive lives away from each other. Given debtor's current financial situation and prospects, no real good can come from plaintiff's continued efforts to collect this obligation. I believe it is most fortunate that the law forces the parties to disentangle their financial affairs in this way, and to move on with their lives.