In re Michael Fowler PETERSON,
Debtor.

Mary Alice PETERSON, Plaintiff,

v.

Michael Fowler PETERSON, Defendant.

Bankruptcy No. 91–41367.
Adv. No. 91–4205.

United States Bankruptcy Court,
W.D. Missouri.

Oct. 30, 1991.

R. Britt Carlson, Kansas City, Mo., for plaintiff.

Jack R. Grate, Jr., Independence, Mo., for defendant and debtor.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

The matter before the Court is the complaint of Mary Alice Peterson to determine the dischargeability of certain debts owed to her by debtor Michael Fowler Peterson, arising out of the dissolution of their marriage. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and may enter final orders pursuant to 28 U.S.C. § 157(b)(2)(I). For the reasons stated below, I find that:

1. Ms. Peterson's right to receive a portion of the General Motors Pension Benefits is not dischargeable in this bankruptcy;

2. Debtor's obligation to pay Ms. Peterson one-half of any net proceeds from a sale of the Holiday Island, Arkansas real estate, after payment of the first mortgage on the property, is a non-dischargeable obligation; and

3. Debtor's remaining obligations to plaintiff Mary Alice Peterson pursuant to the Marital Property Settlement Agreement and the Decree of Dissolution of Marriage are dischargeable in this bankruptcy.

The parties were married in August, 1976, and divorced in October, 1988. Prior to their marriage, Ms. Peterson owned a residence as well as certain other rental property. During the marriage, the rental property was sold and the proceeds used to pay living expenses. In addition, a second mortgage in the amount of $15,000.00 was placed on her residence, the proceeds of which were also used to pay the couple's living expenses.

During the course of their marriage, the parties purchased a resort lot on Holiday Island, Arkansas with the intent of building a home for retirement. That lot is encumbered by a mortgage, but appears to have value in excess of that mortgage.

Mr. Peterson was employed at a General Motors Plant during much of the couple's marriage. However, due to plant closings, layoffs, and medical problems he was unable to work for substantial periods of time, contributing to the couple's financial instability. During the three full calendar years prior to dissolution of their marriage, Mr. Peterson had an annual income of approximately $26,000.00 to $28,000.00. At the time of dissolution he was receiving sick leave pay of approximately $340.00 per week. He is now retired from General Motors and is receiving pension benefits of approximately $1,375.00 per month. At the time of the dissolution the parties were aware that he would be retired and limited to that income. During the three calendar years prior to dissolution, Ms. Peterson had income of $12,000.00 to $14,000.00 per year.

Prior to dissolution of their marriage, the parties entered into an agreement entitled "Marital Property Settlement Agreement" (the "Settlement Agreement"). The Settle-

ment Agreement, among other things, provided for the division of the marital and non-marital property, as well as the debts, of the parties. For purposes of this action, certain of those provisions will be described herein.

First, the Settlement Agreement required Mr. Peterson to make payments on the second mortgage that encumbers Ms. Peterson's residence, as well as certain unsecured charge card debts. Settlement Agreement, ¶ 12(b)(8). Mr. Peterson, however, did not agree to indemnify and hold Ms. Peterson harmless as to such obligations.

Second, the Settlement Agreement dealt with the Holiday Island, Arkansas real estate. Ms. Peterson was to transfer to Mr. Peterson any interest held by her in such property. Mr. Peterson was to be responsible for making all payments on the mortgage encumbering the property. The parties, however, recognized that Ms. Peterson remained liable to the mortgagee, North American Savings and Loan Association. Therefore, the agreement provided that, to the extent Ms. Peterson made any payments on the mortgage, Mr. Peterson would grant her a junior lien on the property. Settlement Agreement, ¶ 12(A). She has made no such payments. The Settlement Agreement also provided that any net proceeds realized from a sale of the Arkansas real estate would be divided equally between the parties. *Id.*

Third, the Settlement Agreement provided that certain personal savings and stock held by Mr. Peterson in the General Motors Benefit Package would be divided evenly, after payment of attorneys fees. Settlement Agreement, ¶ 12(B)(6). Mr. Peterson testified that subsequent to the execution of the Settlement Agreement he cashed out the assets held by him in the General Motors Benefit Package and paid to Ms. Peterson the sum of $1,500.00, representing her one-half interest. Ms. Peterson acknowledged that she had received $1,500.00. The evidence appears to be uncontradicted, and I so find, that Mr. Peterson complied with his obligation under paragraph 12(B)(6) of the Settlement Agreement. Therefore, it is not necessary to analyze the dischargeability of this obligation.

Fourth, the Settlement Agreement dealt with the pension benefits available to Mr. Peterson, who retired the same year of the dissolution. The parties had been married approximately 12 years, and Mr. Peterson had been employed at General Motors for 30 years. It was thus agreed that Ms. Peterson would be entitled to one-half of $^{12}\!/_{30}$ths of each disbursement made by General Motors to Mr. Peterson. Settlement Agreement, ¶ 12(B)(5). Pursuant to this provision, General Motors is sending Ms. Peterson her share directly, in the amount of approximately $240.00 per month.

Finally, the Settlement Agreement provided that Mr. Peterson "shall maintain General Motors Insurance Program for medical, dental, visual, life and spousal benefits now of record. Such insurance benefits shall continue until the remarriage of Wife or the death of Wife". Settlement Agreement, ¶ 12(B)(5). Apparently, unbeknownst to the parties at the time of the dissolution, such benefits were only available to an ex-spouse for three years after a marital dissolution. That period has now passed. Mr. Peterson has not made the required payments. Instead, Ms. Peterson has maintained her insurance by making payments herself, in the amount of approximately $198.00 per month.

In addition to dividing the marital and non-marital property, as well as the debts, the Settlement Agreement specifically provided that the parties waived any claim to statutory maintenance. Paragraph 10 of the Settlement Agreement states as follows:

10. MAINTENANCE OF SPOUSE:

A. Each party hereby releases and discharges each other from any claim for statutory maintenance and agree [sic] not to ask for an allowance of maintenance in the above-described proceedings of the marriage herein. Each party understands that maintenance is waived, they shall be forever barred from receiving any maintenance or asserting any rights thereto.

Similarly, in the Decree of Dissolution of Marriage (the "Decree"), which was entered on November 28, 1988, the Circuit Court of Cass County, Missouri found as follows:

> That the parties hereto have entered into a written Marital Property Settlement Agreement which makes full and final disposition of all property and provides that neither party shall receive maintenance from the other, and the Court finds that said Agreement is not unconscionable and is approved....

The Decree went on to order that "neither party is awarded maintenance by the Court." Decree, p. 2.

■ A party who objects to the discharge of a particular debt has the burden of proving non-dischargeability. Bankruptcy Rule 4005. Pursuant to existing case law, and based upon the arguments presented by the parties, I will follow a three-step analysis in determining whether an obligation imposed pursuant to a settlement agreement between spouses is non-dischargeable. First, it must be determined whether the obligation is a "debt". *See Bush v. Taylor*, 912 F.2d 989 (8th Cir.1990). If so, the next issue is whether the debt is in the nature of alimony, maintenance, or support, and therefore not dischargeable under the Bankruptcy Code. 11 U.S.C. § 523(a)(5). Finally, even if the debt is found not to be alimony, maintenance, or support, there can nevertheless be a holding of non-dischargeability if it is found that the creditor-spouse accepted the settlement agreement in lieu of a valid claim for alimony, maintenance, or support. *See In re Horton*, 69 B.R. 42, 44 (Bankr. E.D.Mo.1986).

■ First, I find that two of Mr. Peterson's obligations do not constitute "debts". These are the obligation to allow a portion of his pension benefits to be paid to Ms. Peterson, and the obligation to share with her the proceeds from the sale of the Arkansas real estate. In *Bush v. Taylor*, the Eighth Circuit considered an ex-wife's claim to one-half of her ex-husband's pension benefits. There, the husband received the entire pension amount each month, and was responsible for cashing the check and paying his ex-spouse her share. The Court found first that the husband held each month's proceeds in constructive trust for the benefit of his ex-wife. *Bush v. Taylor*, 912 F.2d at 993. In the alternative, the Court found that to the extent the pension monies were not yet due and payable on the date the bankruptcy was filed, they did not represent pre-petition debts dischargeable under the Bankruptcy Code. *Id.* For both these reasons, the Court found that the filing of the bankruptcy did not trigger the Code's discharge provisions as to the ex-wife's right to receive a portion of the debtor's pension benefits.

I find that the reasoning of *Bush v. Taylor* is applicable to Ms. Peterson's right to receive a portion of the General Motors Pension Benefits. To the extent that Mr. Peterson might receive pensions monies due and owing Ms. Peterson, he would hold such funds in constructive trust for Ms. Peterson. Of course, in this case, unlike *Bush v. Taylor*, Mr. Peterson never even receives such monies as they come directly to Ms. Peterson from General Motors. Furthermore, under *Bush v. Taylor*, any of the pension monies not yet due and payable on the date the bankruptcy was filed do not give rise to a "debt" that is dischargeable in this case. Therefore, Ms. Peterson's right to receive a portion of the General Motors Pension Benefits is not dischargeable.

The constructive trust analysis of *Bush v. Taylor* is equally applicable to Ms. Peterson's right to receive a portion of the proceeds from the sale of the Arkansas real estate. Under the Settlement Agreement, Mr. Peterson is obligated to pay Ms. Peterson one-half of any net proceeds from the sale of such property, after payment of the first mortgage. The property has not yet been sold, but evidence was offered to show that there may be substantial equity in it. I find that Mr. Peterson holds such property as constructive trustee for Ms. Peterson's benefit, such that his obligation to remit one-half of any net sales proceeds is not a dischargeable obligation.

The remainder of Debtor's obligations under the Settlement Agreement do constitute debts which are subject to the discharge provisions of the Bankruptcy Code. The issue then becomes whether these debts should be declared non-dischargeable under 11 U.S.C. § 523(a)(5). That section provides, in relevant part, as follows:

(a) A discharge ... does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

\* \* \* \* \* \*

(B) such debt includes liability designated as alimony, maintenance, or support unless such liability is actually in the nature of alimony, maintenance, or support;

\* \* \* \* \* \*

11 U.S.C. § 523(a)(5)(B).

▉▉▉ Thus, pursuant to Section 523(a)(5), a debt to a former spouse that arises under a separation agreement is not dischargeable in bankruptcy if such debt is in the nature of alimony, maintenance, or support. In order to determine the true nature of the obligation, the crucial question to be considered by the court is what function the parties intended the agreement to serve when they entered into it. *Boyle v. Donovan*, 724 F.2d 681, 683 (8th Cir.1984); *In re Rice*, 94 B.R. 617, 619 (Bankr.W.D.Mo.1988). A court is not necessarily bound by the labels attached to the award by a settlement agreement or state court. *In re Williams*, 703 F.2d 1055, 1057 (8th Cir.1983). Instead, a court must look beyond the settlement agreement to examine the true nature of the obligations imposed under it.

▉▉▉ In determining the function the parties intended the agreement to serve, the court should first look to the language of the agreement itself. In this case, the Settlement Agreement clearly states that neither party would receive or seek maintenance from the other. In addition, Courts have considered the following factors in determining the intent of the parties:

1. Whether there was an alimony award entered by the state court.

2. Whether there was a need for support at the time of the decree; whether the support award would have been inadequate absent the obligation in question.

3. The intention of the court to provide support.

4. Whether debtor's obligation terminates upon death or remarriage of the spouse or a certain age of the children or any other contingency such as a change in circumstances.

5. The age, health, work skills, and educational levels of the parties.

6. Whether the payments are made periodically over an extended period or in a lump sum.

7. The existence of a legal or moral 'obligation' to pay alimony or support.

8. The express terms of the debt characterization under state law.

9. Whether the obligation is enforceable by contempt.

10. The duration of the marriage.

11. The financial resources of each spouse, including income from employment or elsewhere.

12. Whether the payment was fashioned in order to balance disparate incomes of the parties.

13. Whether the creditor spouse relinquished rights of support in payment of the obligation in question.

14. Whether there were minor children in the care of the creditor spouse.

15. The standard of living of the parties during their marriage.

16. The circumstances contributing to the estrangement of the parties.

17. Whether the debt is for a past or future obligation, any property division, or any allocation of debt between the parties.

18. Tax treatment of the payment of the debtor spouse.

*In re Horton,* 69 B.R. at 44–45 (citations omitted).

 I find generally that the Settlement Agreement and Decree were not intended by the parties, or by the state court, to create obligations in the nature of alimony, maintenance, or support. That conclusion is based on application of the factors listed above. In particular, as stated previously, neither the Settlement Agreement nor the Decree contains any alimony or support award, and, in fact, both specifically state that no such award was to be made. At the time of dissolution, Mr. Peterson was preparing to retire from General Motors with pension income of approximately $1,375.00 per month. Of that total, approximately $240.00 per month was to be, and has been, paid to Ms. Peterson. Ms. Peterson, at the time of the dissolution, had income from her employment of approximately $12,000.00 to $14,000.00 per year. Thus, the parties had approximately equal income at that time, making it unlikely that Mr. Peterson had any legal obligation to pay support. Furthermore, there is nothing in the record about the age, health, work skills, or educational level of the parties that weighs in favor of treating Mr. Peterson's obligations as maintenance or support.

The Settlement Agreement was simply an attempt to sort out and divide the assets and obligations of the parties. Ms. Peterson had brought a residence into the marriage. Prior to the Settlement Agreement, the parties had apparently agreed that the second mortgage incurred on Ms. Peterson's residence should be an obligation of Mr. Peterson. The Settlement Agreement simply reflected that prior agreement by providing that Ms. Peterson would keep the residence as her separate property and that Mr. Peterson would satisfy the second mortgage. As to the Arkansas property, which was purchased during the marriage, the parties agreed that, subject to Ms. Peterson's being entitled to one-half of the net proceeds of any sale, it would be retained by Mr. Peterson, who at one time planned to retire there. Each of the parties accepted the responsibility for certain debts. There were no minor children at the time of dissolution, and there is nothing about the standard of living of the parties during the marriage which weighs in favor of alimony or support.

Ordinarily, a determination that obligations in a dissolution decree are not alimony, maintenance, or support would end our analysis. However, Ms. Peterson contends that her agreement to accept the division of property and debt was in lieu of receiving support from Mr. Peterson. Mr. Peterson denies that maintenance or support was ever discussed, and I find his testimony to be credible on that point. Furthermore, Ms. Peterson has not demonstrated that she would have been entitled to maintenance or support had she not entered into the Agreement. Based on the language of the Settlement Agreement, as well as the extrinsic evidence offered, I find that the obligations imposed on Mr. Peterson were not imposed in lieu of alimony, maintenance, or support.

Based upon the above analysis, I find as follows:

1. Ms. Peterson's right to receive a portion of the General Motors Pension Benefits is not dischargeable in this bankruptcy;

2. Debtor's obligation to pay Ms. Peterson one-half of any net proceeds from a sale of the Holiday Island, Arkansas real estate, after payment of the first mortgage on the property, is a non-dischargeable obligation; and

3. Debtor's remaining obligations to plaintiff Mary Alice Peterson pursuant to the Marital Property Settlement Agreement and the Decree of Dissolution of Marriage are dischargeable in this bankruptcy.

An Order consistent with this Memorandum Opinion will be entered this date.