**In re Keith Alan KLINE, Debtor.**

**Ronald R. HOLLIDAY, Plaintiff,**

**v.**

**Keith Alan KLINE, Defendant.**

**Bankruptcy No. 94–50050.
Adv. No. 94–5010.**

United States Bankruptcy Court,
W.D. Missouri.

July 13, 1994.

Ronald R. Holliday, St. Joseph, MO, pro se.

John M. Warren, St. Joseph, MO, for defendant/debtor.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

·Plaintiff brings this adversary proceeding claiming an award of attorney's fees against Keith Alan Kline, debtor/defendant ("debtor"), is excepted from discharge pursuant to 11 U.S.C. § 523(a)(5). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). For the reasons set forth below, I find that the debt is nondischargeable.

The following shall constitute this Court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52, which is applicable to this adversary action pursuant to Federal Rule of Bankruptcy Procedure 7052.

## FACTUAL BACKGROUND

Plaintiff was the attorney of record for debtor's former wife, Christy Kline, in a contested dissolution proceeding. Christy and Keith Kline were married on April 17, 1991, and separated on April 17, 1993. They have one child, born May 7, 1992. Following a three day trial, an Amended Decree of Dissolution of Marriage (the "Decree") was entered in the Circuit Court of Buchanan County, Missouri on December 23, 1993. The Honorable Edwin H. Smith, the Circuit Court Judge who presided at the trial, found that "[r]espondent should pay Petitioner's attorney's fees in the amount of Six Thousand Three Hundred Five Dollars ($6,305). The Court makes this finding based upon the Court's consideration of the financial resources of both parties and all other relevant factors, including the marital misconduct of Respondent [debtor here] and the fact that the Court finds that much of the efforts of the Petitioner's attorney were directed against unreasonable positions taken by Respondent [debtor here] in' the proceeding." Pl. Exh. #2, ¶17 at 3. Judge Smith awarded custody of the one minor child to Christy Kline and ordered that debtor pay child support in the amount of $615.00 per month. He also ordered that neither party pay spousal maintenance to the other.

Debtor filed a Chapter 7 bankruptcy petition on February 1, 1994, and listed the debt to plaintiff on his bankruptcy schedules.

Prior to trial, plaintiff deposed Judge Smith, over the objection of debtor's counsel, and in general asked Judge Smith whether he intended that his award of attorney's fees be dischargeable.

The parties stipulated to· the admission of the deposition of Judge Smith, with the objections of debtor's counsel preserved, and agreed to submit the proceeding to this Court on Stipulations and Trial Briefs.

## DISCUSSION

Section 523(a)(5) of the Bankruptcy Code excepts from discharge debts which are "actually in the nature of alimony, mainte-

nance, or support." [1] The party objecting to the dischargeability of certain debts under section 523(a) bears the burden of proving each element of the objection by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); Fed.R.Bankr.P. 4005. Whether an obligation is in the nature of support or a property settlement is a matter of federal bankruptcy law. *Williams v. Williams (In re Williams),* 703 F.2d 1055, 1056 (8th Cir. 1983). The crucial issue is the function the award was intended to serve. *Telgmann v. Maune (In re Maune),* 133 B.R. 1010, 1014 (Bankr.E.D.Mo.1991). Moreover, debts payable to a third party may be nondischargeable support obligations if they were intended to serve as such. *Williams* at 1057.

■ In determining the award's intended function, the court should first look to the language of the Decree itself. *Peterson v. Peterson (In re Peterson),* 133 B.R. 508, 512 (Bankr.W.D.Mo.1991); *Grundy Nat'l Bank v. Frank (In re Frank),* 103 B.R. 771, 773 (W.D.Va.1989). Courts also have considered a number of different factors in determining whether an obligation represents support or property division. *See, Horton v. Horton (In re Horton),* 69 B.R. 42, 44–45 (Bankr. E.D.Mo.1986). However, the ultimate goal is to determine the function the award was intended to serve, and that function is obvious from the Decree in this case. Judge Smith's primary basis for assessing fees against debtor was the financial resources of the parties. Pl.Ex. # 2, ¶ 17 at 3, ¶ 16 at 6. At the time of the dissolution, debtor had monthly income of $3,583.00. Ms. Kline was presumed able to work full-time at minimum wage, for a monthly income of $737.00. Under Missouri law, the financial resources of both parties is the primary factor to be utilized in allocating attorney's fees. Mo.Rev.

Stat. § 452.355 (Supp.1994). Therefore, allocating Ms. Kline's attorney's fees to debtor and requiring the fees to be paid by the party best able to pay them—the debtor, equalized the disparity in income between the two parties. Given the income imputed to Ms. Kline, requiring her to pay her attorney's fees would have interfered with her ability to support herself. The *Williams* Court found that an award of attorney's fees to the spouse with the higher income may be intended to allow the other spouse to meet her monthly living expenses. *Williams,* 703 F.2d at 1057.

■ Debtor points out that the Decree found that Ms. Kline could support herself through appropriate employment and, therefore, she was not entitled to decretal maintenance under Missouri law. Pl.Ex. 2 ¶ 11 at 2. *See,* Mo.Rev.Stat. § 452.335 (Supp.1994). However, this Court is not bound by the categorization of the award contained in the state court dissolution decree or by the state law definition of the award. *Williams* at 1057; *Telgmann v. Maune (In re Maune),* 133 B.R. 1010, 1014 (Bankr.E.D.Mo.1991).

Debtor also argues that in addition to the financial resources of the parties, Judge Smith referred to two other factors in awarding attorney's fees. One of these is marital misconduct, which is a circumstance which contributes to the estrangement of the parties, and can be a factor used by the Bankruptcy Court in determining that an award constitutes support. *Horton,* 69 B.R. at 44–45. In addition, Judge Smith noted that much of Mr. Holliday's time was spent countering unreasonable positions taken by debtor's counsel in the dissolution proceeding. That factor, however, would appear to affect the amount of fees awarded, not the function the fees were intended to serve. Clearly the

---

1. Section 523(a)(5) of the Bankruptcy Code provides as follows:

    (a) A discharge under section 727, 1141, 1221(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

      .    .    .    .    .

    (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or

other order of a court of record, determination made in accordance with State or territorial law by a government unit, or property settlement agreement, but not to the extent that—

    .    .    .    .

    (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

11 U.S.C. § 523(a)(5).

driving force behind Judge Smith's ruling was the financial disparity between the parties.

■ While not necessary to my decision, I will now consider the admissibility of Judge Smith's deposition. I find that such evidence is not admissible.[2]

The Bankruptcy Court in the Eastern District of Missouri allowed the voluntary testimony of the state court judge, by way of either deposition or affidavit, to discern such judge's intent at the time he or she entered the dissolution decree. *Senkel v. Fahland (In re Fahland)*, 110 B.R. 431, 433 (Bankr. E.D.Mo.1990); *Fornachon v. Fornachon (In re Fornachon)*, 99 B.R. 428, 431 (Bankr. E.D.Mo.1989). In a later decision, however, that Court held that "when the Findings and Conclusions and Orders of a trial court are embodied within the written documents and orders entered in a contested matter, the compelled deposition or subpoenaed testimony of the trial judge is inappropriate and unnecessary." *Rogers v. Rogers (In re Rogers)*, 131 B.R. 847, 848 (Bankr.E.D.Mo.1991). In contrast to these decisions, in *Norman v. Norman (In re Norman)*, 12 B.R. 512, 514 (Bankr.W.D.Mo.1981), this Court refused to allow a state court judge to testify as to his intent when the debtor objected to such testimony. The *Norman* court held that a state court judge should not be allowed to second-guess his decision by testifying some time later as to his intent at the time the original judgment was entered. *Id.* at 514.

■ Indeed, there are compelling policy reasons to exclude the testimony of judges regarding their prior decisions, whether that testimony is voluntary or compelled. First, case law holds that only under extraordinary circumstances can a judge be required to testify concerning any actions taken in his judicial capacity. *In re Thompson*, 77 B.R. 113 (N.D.Ohio 1987). *See also United States v. Zipkin*, 729 F.2d 384, 389 (6th Cir.1984); *United States v. Dowdy*, 440 F.Supp. 894, 896 (W.D.Va.1977). The *Dowdy* court goes on to explain that there is a vested public interest

in preventing the interruption of the judiciary's ordinary and proper function. *Dowdy* at 896. Therefore, out of respect for the dignity and integrity of the judiciary, judges should not be vulnerable to subpoena on the basis of their official actions. *Id.* This argument clearly goes to compelling a judge to testify against his will regarding a prior decision. However, the remaining arguments are persuasive whether the testimony is compelled or voluntary.

■ The Supreme Court held that "an examination into the mental processes of a judge would be destructive of judicial responsibility and, thus, should not be permitted." *Id. citing United States v. Morgan*, 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1940). There is also no probative value in having a judge testify as to the meaning of an order when the order is available because an order entered by a judge should speak for itself. *Id.* The concern here is for finality. The Supreme Court stated that, "[a] judgment is a solemn record. Parties have a right to rely upon it. It should not lightly be disturbed, and ought never to be overthrown or limited by the oral testimony of a judge or juror of what he had in mind at the time of the decision." *Norman v. Norman*, 12 B.R. 512, 514 (Bankr.W.D.Mo.1981), *quoting Fayerweather v. Ritch*, 195 U.S. 276, 307–08, 25 S.Ct. 58, 67–68, 49 L.Ed. 193 (1904). *See, also United States v. Zipkin*, 729 F.2d 384, 389 (6th Cir.1984). Lastly, the determination of legal conclusions or principles is not the proper subject of testimony by a witness, even if that witness happens to be a judge. *Id.* In *Zipkin*, even though the defense demonstrated on cross-examination that the judge had misinterpreted the law during his testimony, the jury was swayed by his interpretation of a prior order which went beyond the provisions found within the order itself. *Id.* at 387. *See also United States v. Robbins*, 997 F.3d 390, 393–94 (8th Cir.1993). For all of the above reasons, I sustain the debtor's objections to questions asked of Judge Smith relating to his interpretation of the Decree.

---

**2.** Judge Smith testified that in awarding attorney's fees he compared the financial resources and ability to pay of the two parties. Pl.Exh.

# 1, p. 33. He also testified that most of the trial time was spent on the issue of child custody. Pl.Exh. # 1, p. 9.

However, based upon the language of the Decree, I find the obligation for attorney's fees nondischargeable.

An Order consistent with this Memorandum Opinion will be entered this date.