**In re Gerald Dean HAMBLEN, Debtor.**

**Norma Johnson, Plaintiff,**

v.

**Gerald Dean Hamblen, Defendant.**

**Bankruptcy No. 98–44107–JWV.
Adversary No. 99–4004–1.**

United States Bankruptcy Court,
W.D. Missouri.

May 5, 1999.

Kevin L. Walden, Carrollton, MO, for plaintiff.

Randall W. Cain, Lees Summit, MO, for defendant.

### MEMORANDUM OPINION AND ORDER

JERRY VENTERS, Bankruptcy Judge.

This matter comes before the Court on the Complaint of Norma Johnson, the former wife of the Debtor, Gerald Dean Hamblen, to determine the dischargeability of debts pursuant to 11 U.S.C. § 523(a)(5) and (a)(15). Gerald Dean Hamblen filed for relief under Chapter 7 of the Bankruptcy Code on September 29, 1998, and was granted a discharge on December 30, 1998. Norma Johnson filed a timely Complaint to Determine Dischargeability of Debts on December 28, 1998, objecting to the discharge of three debts assigned to the Debtor pursuant to a divorce decree entered by the Circuit Court of Carroll County, Missouri. For the reasons stated herein, the Court finds that these debts are nondischargeable under 11 U.S.C. § 523(a)(5).

The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

### FACTS

Norma Johnson ("Norma") and Gerald Dean Hamblen ("Debtor" or "Gerald") were married for some 24 years before their marriage was dissolved by the Circuit Court of Carroll County, Missouri, on November 22, 1996. At the time of the divorce, Norma and Gerald did not enter into a property settlement or separation agreement. After an evidentiary hearing, the Circuit Court entered a decree in which it divided their property and allocated responsibility for payment of their individual and joint debts. There are three joint debts that are at issue in this case:

(1) A credit card debt to Discover Card on which Gerald was ordered to pay $1,391.06 and Norma was ordered to pay $1,391.06.

(2) A debt to Carroll County Trust Company. The divorce court ordered Norma to pay $3,869.20 of the balance owed on this debt, and Gerald was ordered to pay $5,869.20.

(3) Gerald was ordered to pay a debt of $20,692.96 to Ford Motor Credit Company. This debt was secured by a 1993 Ford Explorer which was awarded to Gerald.

In addition to these debts, Norma was made solely responsible for payment of a debt of $1,836.21 to AARP Visa, and Gerald was ordered to pay seven other debts, most of them credit card debts, totaling

more than $15,000.00.[1] In allocating the responsibility for payment of the debts between Norma and Gerald, the Court directed that each party should pay the debts set aside to him or her and should indemnify and hold the other party harmless for those debts.

Apparently, Gerald was·unable or refused to pay the debts he had been ordered to pay, and instead filed a Chapter 7 bankruptcy. Prior to the entry of a discharge, Norma filed a two-count Complaint asking the Court to deny Gerald a discharge with respect to the debts owed Carroll County Trust Company, Ford Motor Credit Company, and Discover Card, pursuant to § 523(a)(5) (Count I), or, alternatively, § 523(a)(15) (Count II) of the Bankruptcy Code.

The evidence at trial established that Norma, using borrowed funds, has paid Discover Card the $1,391.06 she was ordered to pay Discover, and that she is currently paying Carroll County Trust Company $100.00 per month toward the $3,869.20 balance which she was ordered to pay to that creditor.

On the other hand, the evidence established that Gerald did not pay the amounts he was ordered to pay to Carroll County Trust Company, Discover Card, or Ford Motor Credit Company. Gerald testified that he made perhaps three or four payments to Carroll County Trust Company and Ford Motor Credit Company after the divorce was entered, but that he then ceased making payments and subsequently filed bankruptcy. The Ford Explorer automobile that secured the debt to Ford Motor Credit Company was surrendered to Ford, resulting in a deficiency of approximately $7,000.00.

In the divorce decree, after dividing the marital debts as described hereinabove, the divorce court stated:

"Respondent's [Gerald's] assumption and obligation to pay the above referenced joint debts, to the exclusion of the

Petitioner [Norma], *are in the nature and lieu of spousal maintenance,* and a failure by Respondent [Gerald] to indemnify Petitioner [Norma] for payment of these debts is not dischargeable in bankruptcy or any other insolvency proceedings. Except as provided in this paragraph, however, *no other spousal maintenance shall be awarded to either party.* This maintenance award is non-modifiable." (emphasis added)

As indicated, the court did not award Norma any separate spousal maintenance.

At the trial on Norma's Complaint, the parties devoted most of their time and energy to the development of evidence indicating that neither party had the ability to pay the debts. However, because the Court has determined that this matter should be resolved pursuant to § 523(a)(5), it will not be necessary to set out in any detail the financial conditions of the former spouses. Suffice it to say that neither Norma, with income of just $1,020.53 a month from disability benefits and a company pension, nor Gerald, with income of just $1,102.00 a month from disability benefits and a company pension, is capable of paying any substantial amount of debt. Furthermore, neither party is likely to have increased earnings at any time in the future. Norma is 61 years old and is extremely hard of hearing, and Gerald is 51 years old and also suffers from a very serious hearing disability, and it would appear to the Court that neither is likely employable at this time in their lives.

## DISCUSSION

In Count I of her Complaint, Norma asked that Gerald be denied discharge with respect to the joint debts which were allocated to Gerald by the divorce court, pursuant to the provisions of 11 U.S.C. § 523(a)(5). That section provides as follows:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this

[1] These other debts were not joint debts, but were Gerald's individual debts.

title does not discharge an individual debtor from any debt—

> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

> \* \* \*

> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

11 U.S.C. § 523(a)(5).

The question that must be answered by this Court then is whether Gerald's obligation to pay the debts allocated to him by the divorce court constitutes a liability "in the nature of alimony, maintenance, or support."

Whether an obligation is in the nature of alimony, maintenance, or support is a matter of federal bankruptcy law. *Williams v. Williams (In re Williams)*, 703 F.2d 1055, 1056 (8th Cir.1983). The characterization of the obligation depends primarily on the function the award was intended to serve at the time it was awarded, *In re Reiff*, 166 B.R. 694, 696 (Bankr. W.D.Mo.1994), and debts payable to a third party may be nondischargeable if the parties intended them to serve as alimony, maintenance, or support. *Holliday v. Kline (In re Kline)*, 65 F.3d 749, 751 (8th Cir.1995), rev'g *In re Kline*, 174 B.R. 525 (W.D.Mo.1994), rev'g *In re Kline* 172 B.R. 279 (Bankr.W.D.Mo.1994); *In re Williams*, 703 F.2d at 1057. The parties' intent is determined by the totality of circumstances at the time of the award, *In re Frye*, 231 B.R. 71, 73 (Bankr.E.D.Mo. 1999); *In re Williams*, 703 F.2d at 1057–58, but most courts have narrowed the inquiry down to one or more of three main factors: (1) the language and substance of the dissolution decree or separation agreement, *In re Kline*, 172 B.R. 279, 281 (Bankr.W.D.Mo.1994); *In re Peterson*, 133 B.R. 508, 512 (Bankr.W.D.Mo.1991); (2) the relative financial circumstances at the time of the dissolution; *Holliday v. Kline*, 65 F.3d. at 751; *In re Stamper*, 131 B.R. at 433, 435 (Bankr.W.D.Mo.1991); and (3) the degree to which the obligation enables the recipient to maintain daily necessities. *In re Stamper*, 131 B.R. at 435; *In re Jensen*, 17 B.R. 537, 539–40 (Bankr. W.D.Mo.1982) (holding that a debtor's obligation to pay various joint consumer debts was nondischargeable where the award was "intended to free money that she [the non-debtor spouse] might otherwise have to pay the debtor's bills so that she might use it for her own maintenance and support.").[2] The Court finds that in the present case all three of these factors indicate that the dissolution decree ordering Gerald to assume and pay certain joint debts was intended to function as maintenance.[3]

---

**2.** *See also, Moeder v. Moeder (In re Moeder)*, 220 B.R. 52, 54 (8th Cir. BAP 1998) ("Factors to be considered by the courts in determining whether an award arising out of marital dissolution proceedings was intended to serve as an award for alimony, maintenance or support, or whether it was intended to serve as a property settlement include, but are not limited to: the relative financial conditions of the parties at the time of the divorce; the respective employment histories and prospects for financial support; the fact that one party or another receives the marital property; the periodic nature of the payments; and whether it would be difficult for the former spouse and children to subsist without the payments.") (citing *Tatge v. Tatge (In re Tatge)*, 212 B.R. 604, 608 (8th Cir. BAP 1997) and *Kubik v. Kubik (In re Kubik)*, 215 B.R. 595, 599 (Bankr.D.N.D.1997)).

**3.** Although we reach the same ultimate result as the state court, we note that this Court is not bound by the state court's declaration in the divorce decree that "this debt is nondischargeable in bankruptcy." *See In re Markizer*, 66 B.R. 1014, 1018 (Bankr.S.D.Fla.1986) (holding that statement in marital settlement agreement waiving dischargeability was "wholly void" and against public policy).

The first factor clearly weighs in favor of a finding that the arrangement in the divorce decree was intended to function as maintenance. The decree explicitly states, "Respondent's [Gerald's] assumption and obligation to pay the above referenced joint debts, to the exclusion of the Petitioner [Norma], are in the nature and lieu of spousal maintenance ..." And although this Court is not bound by the determination of the state court as to the nature of the obligation, we believe that due deference should be given to the parties' or state court's characterization of the award. *In re Stamper*, 131 B.R. at 435 ("The Court will not necessarily be bound by the labels attached to the award by the state court, but will give weight to the findings of the prior Court."); *In re Peterson*, 133 B.R. at 512 ("In determining the function the parties intended the agreement to serve, the court should first look to the language of the agreement itself."). Furthermore, this Court has no reason to depart from the state court's characterization of the award. Other bankruptcy courts have found similar debts assumed by a debtor to be in the nature of maintenance, *see e.g., Dewey v. Dewey (In re Dewey)* (finding jointly incurred credit card debt assumed by debtor nondischargeable), 223 B.R. 559, 564 (10th Cir. BAP 1998), and the fact that there was no other support award strengthens the inference that the divorce court intended the award to be in the nature of maintenance or support. The divorce court made its intentions clear by stating that "no *other* spousal maintenance shall be awarded to either party ..." (emphasis added) *See In re Reiff*, 166 B.R. 694; *In re Horton*, 69 B.R. 42, 44 (Bankr.E.D.Mo.1986) (finding indemnification and hold harmless agreement to be in the nature of maintenance where it was "in lieu of maintenance and support.").

In regard to the second factor, the relative financial condition of the parties, the Court finds that although neither party appears to have been in a "good" financial condition at the time of the decree, Gerald was, on balance, in a slightly better financial position than Norma. Gerald is ten years younger than Norma, and in 1996 when the divorce decree was entered, Gerald, then 48 years old, was most likely considered to have a higher likelihood of obtaining employment than Norma did.

Third, the Court finds that the award was made for the purpose of enabling Norma to maintain daily necessities. At the time of the divorce three years ago, Norma's only source of income was (and still is) $1,020.53 from disability benefits and a company pension. In addition to her living expenses, Norma must make payments on the portion of the marital debts assigned to her by the state court, which include $1,391.06 to Discover Card and $3,869.20 to the Carroll County Trust Company. That Norma has already paid off the debt to Discover Card using borrowed funds is irrelevant because the only relevant circumstances are those that existed at the time of the decree. *In re Horton*, 69 B.R. at 44. Describing Norma's financial situation at the time, the state court stated in the divorce decree, "[Norma] lacks sufficient property, including the marital property apportioned to her, to provide for her reasonable needs, and is unable to support herself through appropriate employment if she is required to pay the joint debt allocated to Respondent [Gerald]." This Court agrees with the state court's evaluation of Norma's financial situation and its conclusion that Gerald's assumption of certain debts would enable Norma to support herself.

Although statutory exceptions to discharge normally are subject to narrow construction, *Werner v. Hofmann*, 5 F.3d 1170, 1172 (8th Cir.1993), the Eighth Circuit Court of Appeals has held that exceptions from discharge for spousal and child support "deserve a more liberal construction." *Holliday v. Kline*, 65 F.3d at 751. *See In re Miller*, 55 F.3d 1487, 1489 (10th Cir.1995) ("The policy underlying section 523(a)(5) ... favors enforcement of familial

**436**

support obligations over a 'fresh start' for the debtor."). In the present case, the state divorce court, having heard the evidence and having considered the relative financial circumstances of the parties, made clear its intention that Gerald's obligation to pay the three debts at issue was to be in lieu of maintenance payments to Norma and that no other spousal maintenance was to be awarded for that reason. This determination by the state court is entitled to great weight. *In re Stamper,* 131 B.R. at 435.

For the foregoing reasons, the Court finds that the debts assigned to the Debtor Gerald Hamblen by the divorce decree entered by the Circuit Court of Carroll County, Missouri, on November 22, 1996, were intended to be in the nature of alimony, maintenance or support and are therefore nondischargeable pursuant to § 523(a)(5) of the Bankruptcy Code.

It is therefore

**ORDERED** that the Debtor, Gerald Dean Hamblen, be and is hereby denied discharge pursuant to 11 U.S.C. § 523(a)(5) with respect to his obligation to pay the debts owing to Carroll County Trust Company ($5,869.20), Ford Motor Credit Company ($20,692.96), and Discover Card ($1,391.06), as provided in the decree entered by the Circuit Court of Carroll County, Missouri, on November 22, 1996.

It is **FURTHER ORDERED** that Plaintiff Norma Johnson is denied the relief sought in Count II of her Complaint.

The Clerk shall enter judgment in accordance with this Order.

**SO ORDERED.**