**In re Wendall Alan WALTNER, Debtor.**

**Kimberly M. Waltner, Plaintiff,**

v.

**Wendall Alan Waltner, Defendant.**

**Bankruptcy No. 01–43171–JWV.**
**Adversary No. 01–04151–JWV.**

United States Bankruptcy Court,
W.D. Missouri,
Western Division.

Dec. 27, 2001.

Donald J. Lock, Gladstone, MO.

Lorinda D. Walters, Walters Legal Service, Kansas City, MO.

## MEMORANDUM OPINION AND ORDER

JERRY W. VENTERS, Bankruptcy Judge.

This adversary proceeding comes before the Court on a Complaint to Determine Dischargeability of Debts under 11 U.S.C. § 523(a)(5) filed by Kimberly Waltner, the former wife of the Debtor, Wendall Waltner. The Court held a trial on this matter on November 29, 2001. At the close of the trial, the Court announced that it would take the matter under advisement. The Court has considered the evidence adduced at trial, the pleadings, and relevant caselaw and is now ready to rule.

For the reasons set out below, the Debtor will be granted a discharge of his obligation to pay the seven marital debts stipulated to at trial because those debts are not "in the nature of support" as required for an exception to discharge under 11 U.S.C. § 523(a)(5).

This Memorandum Opinion and Order constitutes the Court's Findings of Fact and Conclusions of Law as required by Federal Rule of Bankruptcy Procedure 7052. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and (J), and the Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.

## FACTUAL BACKGROUND

Kimberly M. Waltner ("Kimberly") and Wendall Alan Waltner ("Debtor" or "Wendall") were married on March 14, 1988. Their marriage ended in a Judgment of Dissolution of Marriage entered by the Circuit Court of Clay County, Missouri ("Circuit Court") on June 15, 2001. The Circuit Court entered the decree after three evidentiary hearings, awarding maintenance to Kimberly and dividing the marital assets and liabilities. The property division provided that Kimberly receive the marital home subject to an $11,000.00 judgment lien in favor of Wendall, to be paid to Wendall within seven years. She was also awarded a 1996 Ford Taurus and other personal property. Wendall was awarded a 1993 Nissan Altima, a 1989 Ford F–250, and other personal property. The decree also divided the liabilities between the parties. Kimberly was ordered to pay the remaining mortgage obligation on the home awarded to her as well as the debt for the 1996 Ford Taurus. Other debts assigned to Kimberly included credit card debts, medical bills, and a cellular telephone bill. The total that Kimberly was ordered to pay in marital debts was $102,217.00.[1] Wendall was ordered to pay the debts related to the two vehicles awarded to him and various credit card debts and personal property taxes. The total debt assigned to Wendall was $42,443.00.

On June 23, 2001, immediately after the divorce, Wendall filed his bankruptcy petition under Chapter 7. Creditors have begun sending collection notices to Kimberly in an effort to collect from Kimberly the debts assigned to Wendall, because Wendall has not made payments on those debts.

The marital debts assigned to Wendall that are at issue in this proceeding have been stipulated to by the parties.[2] They are:

---

1. This total includes a debt on the home mortgage of $79,268.00 and on the 1996 Ford Taurus of $10,600.00. The remaining debts totaled $12,349.00.

2. The parties agree that the obligation to Larry and Patricia Meek in the amount of $3,000.00 and the obligation to Charles and Delores Waltner in the sum of $13,200.00 are not in issue because Kimberly is not legally liable for these debts. The parties have also stipulated that the personal property tax bill from the Platte County Collector in the

(1) 1993 Nissan debt in the amount of $6,000.00 (Union Acceptance Corporation)

, (2) Fleet Visa in the amount of $2,810.00

(3) Citibank Visa in the amount of $5,568.00

(4) Platinum Priority Visa in the amount of $8,659.00

(5) Sears in the amount of $344.00

(6) General Account Services, Inc. in the amount of $332.00

(7) Kansas University Medical Center in the amount of $57.00.[3]

Wendall presented evidence that he was unable to pay his current financial obligations. Wendall's net monthly income is $2,013.00 and his expenses are $2,130.00, which includes the maintenance he pays to Kimberly of $1,166.00. According to the testimony and his bankruptcy schedules, the Debtor does not have any disposable income to service the marital debts he was ordered to pay.

At trial, the evidence was uncontroverted that Kimberly is disabled. She suffers from a medical condition known as reflex sympathetic dystrophy syndrome. Her condition has declined to the point that it involves the entire left side of her body. A device has been implanted in her stomach that pumps pain killers (morphine) into her spine. She also has a device on her back that helps her with the pain. There is no known cure for the disease and at the current time she is treated only for her symptoms. Kimberly has extraordinary medical expenses because of her condition and currently has no medical insurance coverage.[4] At the trial, she testified that her monthly medical bills alone are $1,234.00 and that her prescriptions are an additional $300.00 per month.

Because Kimberly lacked sufficient property to provide for her reasonable needs, the Circuit Court computed a maintenance award in the amount of $1,166.00 per month. The Circuit Court also ordered the payment of back support of $1,280.00 and an award of suit money in the sum of $500.00 to be paid by the Debtor. Kimberly's current income consists of a monthly disability check in the amount of $806.00 and maintenance in the amount of $1,166.00.[5] Kimberly is concerned that creditors will look to her for payment of the martial debts if those debts are discharged in Wendall's bankruptcy. Kimberly brought this action to determine whether the marital debts assigned to Wendall are nondischargeable pursuant to 11 U.S.C. § 523(a)(5).[6] For the reasons

---

amount of $173.00 has been paid by Kimberly and therefore is not at issue. The parties also agree that the 1989 Ford truck debt is not in issue because the Debtor intends to reaffirm that debt so that he may keep the vehicle. The Court will ignore these four debts and not consider them in its determination of dischargeability.

**3.** These debts are listed in Wendall's bankruptcy schedules, but the amounts are different than in the divorce decree. No evidence was offered to explain the differences.

**4.** Wendall apparently dropped Kimberly from his health plan without her knowledge when they were separated.

**5.** At the time of dissolution Kimberly had rental income from her son of $100.00 per month; however, this income has terminated because her son is going to school full time and is no longer working.

**6.** The complaint for relief was so poorly drafted that the Court was unclear as to what relief the Plaintiff was requesting. Since the parties stipulated to certain marital debts only those seven debts are properly before the Court. The Court heard no evidence to determine whether the suit money of $500.00 was nondischargeable. There is no dispute that the monthly maintenance of $1,166.00 and $1,280.00 of retroactive support are well within the meaning of § 523(a)(5) and therefore are nondischargeable.

set forth below, the Court finds that these debts are dischargeable because they are not "in the nature of support or maintenance" as required under 11 U.S.C. § 523(a)(5).

## DISCUSSION

The Bankruptcy Code[7] provides that certain debts are not dischargeable; one of these is the obligation to pay child support and maintenance paid to former spouses. 11 U.S.C. § 523(a)(5) provides as follows:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

\* \* \* \* \* \*

(B) such debt includes a liability designated as alimony, maintenance, or support, *unless such liability is actually in the nature of alimony, maintenance, or support.*

11 U.S.C. § 523(a)(5). (emphasis added).

 Whether an obligation is in the nature of maintenance or support is a mat-

ter of federal bankruptcy law. *Williams v. Williams (In re Williams),* 703 F.2d 1055, 1056 (8th Cir.1983). The characterization of the obligation depends primarily on the function of the award at the time it was awarded. *Johnson. v. Hamblen (In re Hamblen),* 233 B.R. 430, 434 (Bankr. W.D.Mo.1999). The party objecting to the discharge under § 523(a) has the burden of proving each element by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Several factors may be considered by the Court in determining whether debts assigned by a divorce court are "in the nature of support". *Hamblen* at 434.[8] This Court in *Hamblen* applied three factors: (1) the language and substance of the dissolution decree or separation agreement; (2) the relative financial circumstances at the time of the dissolution; and (3) the degree to which the obligation enables the recipient to maintain daily necessities. *Id.*

Kimberly argues that the Circuit Court intended the debts assigned to Wendall to function as support. However, this Court finds persuasive evidence to the contrary in the language of the dissolution decree. First, the Circuit Court awarded maintenance to Kimberly, stating in relevant part:

15. That Respondent [Kimberly] is disabled and receives $806.00 per month from Social Security Disability, and

---

7. Title 11, United States Code.

8. *See also, Moeder v. Moeder (In re Moeder),* 220 B.R. 52, 54 (8th Cir.BAP1998) ("Factors to be considered by the courts in determining whether an award arising out of marital dissolution proceedings was intended to serve as an award for alimony, maintenance or support, or whether it was intended to serve as a property settlement include, but are not limited to: the relative financial conditions of the parties at the time of the divorce; the respec-

tive employment histories and prospects for financial support; the fact that one party or another receives the marital property; the periodic nature of the payments; and whether it would be difficult for the former spouse and children to subsist without the payments.") citing *Tatge v. Tatge (In re Tatge),* 212 B.R. 604, 608 (8th Cir. BAP 1997) and *Kubik v. Kubik (In re Kubik),* 215 B.R. 595, 599 (Bankr.D.N.D.1997).

lacks sufficient property, including marital property apportioned to her, to provide for her reasonable needs and is unable to fully support herself through appropriate employment. It is further found that, notwithstanding Petitioner's [Wendall] denials regarding same, Petitioner works side jobs and Petitioner's wages and earnings, in conjunction with his earnings from side jobs, provides Petitioner with total gross wages and earnings of approximately $38,865.00 per year.

\* \* \* \* \* \*

... it is proper to combine these two incomes of $10,872.00 per year and $38,865.00 per year to yield a total combined income of the parties of $49,737.00 and then divide same by two (2), which equals $24,868.00. It is further found that it is proper to award to Respondent this yearly sum ($24,868.00) less Respondent's annual gross income and funds available of $10,872.00, which equals $13,996.00 and then divide that sum by 12 in order to yield the monthly maintenance obligation which should be imposed upon Petitioner.

Pl.Ex. 10 ¶ 15.

The Circuit Court knew how to award maintenance and carefully calculated the support so that their total income was equally divided between Kimberly and Wendall. If the Circuit Court had intended the assignment of debt to serve as maintenance or support then it is reasonable to believe that it would have stated that intention in the decree. While this Court is not bound by the Circuit Court's characterization of the award, *Kennard v. Kennard (In re Kennard)*, 259 B.R. 146, 148 (Bankr.W.D.Mo.2001), Kimberly has the burden of proving that the Circuit Court intended something other than what is stated in the decree. *Id.* The Circuit Court divided the marital assets and liabilities equally between the parties (excluding the home mortgage), just as it had their incomes. There is no evidence that the Circuit Court intended this property division to serve as an additional means of support for Kimberly. The Court therefore finds that the allocation of the seven debts at issue in this case was not in the nature of maintenance or support and Wendall's obligation to pay those debts is not excepted from discharge under § 523(a)(5).

With respect to the second factor enumerated in *Hamblen*, the above-quoted portions of the dissolution decree amply demonstrate that the Circuit Court gave full consideration to the relative financial circumstances of the parties and took meticulous care to assure that their incomes were equalized. As for the third factor, whether Wendall pays the seven debts at issue or does not pay them will not materially affect Kimberly's ability to maintain her daily necessities. Kimberly testified and demonstrated by exhibit that her monthly living expenses are at least $3,241.66, which far exceeds her monthly income of $1,972.00. Given Kimberly's very high medical expenses and prescription drug costs, she needs additional income of almost $1,300.00 a month just to pay her basic living expenses. Under these circumstances, it is clear that Wendall's payment of the seven debts at issue would not help Kimberly meet her daily living expenses; it is equally and painfully clear that Kimberly does not have the ability to pay the debts at issue, and the Court believes it is unlikely that she will pay them.

The application of the factors enumerated in *Hamblen* supports this Court's conclusion that the seven debts assigned to Wendall by the Circuit Court are not "in the nature of support."

Typically in a case involving a marital debt arising out of a dissolution decree or settlement agreement, a complaint will allege not only that the debt is nondischargeable under § 523(a)(5), but in the alternative will request a finding of nondischargeability under § 523(a)(15) of the Code.[9] Counsel for Plaintiff did not request relief under § 523(a)(15). Instead, he chose to request in his prayer for relief that the Court determine the dischargeability of these debts under § 523(a)(5) alone. Further, Plaintiff's counsel never asked to amend his pleadings at trial even though both parties were focusing on a current ability to pay the debt that is not a relevant factor under § 523(a)(5) but is rather a defense under § 523(a)(15). *Silvers v. Silvers (In re Silvers)*, 187 B.R. 648, 649 (Bankr.W.D.Mo.1995).

■ The procedure to amend the pleadings to conform to the evidence is established by Federal Rule of Civil Procedure Rule 15(b), applicable in bankruptcy cases by Rule 7015, Federal Rules of Bankruptcy Procedure:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues ... Fed.R.Civ.P. 15(b).

"The intent of rule 15(b) is to provide the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Bahr v. Nett (In re Nett)*, 70 B.R. 868, 870 (Bankr.W.D.Wis.1987) (quoting *Hardin v. Manitowoc–Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir.1982)). The inquiry to determine whether the pleadings have been amended by the consent of the parties begins with the test for consent: "[W]hether the opposing party had a fair opportunity to defend and whether he could have presented additional evidence had he known sooner the substance of the amendment." *Id.* In this case, the parties never expressly consented to amend the pleadings to include a determination of dischargeability under § 523(a)(15). The question of whether there was implied consent is closer. Although no objection was made to the evidence on the ground that is was outside the issues as framed by the pleadings, objections to the relevancy of some of the evidence were made by Debtor's counsel and sustained. The Court also reminded the parties that the issue before the Court was whether the debts were intended to serve as maintenance or support, thereby narrowing the issue to § 523(a)(5).[10] Giv-

---

**9.** Section 523(a)(15) reads as follows:

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of the court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. § 523(a)(15).

**10.** Plaintiff's counsel never asked that the pleadings be amended to include

en the objections made by Debtor's counsel, although not always in the proper form, and the Court's clarification of the statutory ground presented, the Court cannot and will not allow the pleadings to be amended to conform to the evidence presented because it would be unfair to the Debtor and Debtor's counsel, as they did not have the opportunity to present any additional evidence and did not have adequate notice to defend against a claim under § 523(a)(15).

■ Even if the pleadings had been amended to include § 523(a)(15), Plaintiff would not prevail under these facts. The nondebtor former spouse must prove the elements of § 523(a)(15): that the debt was incurred by the debtor in the course of a divorce proceeding, the debt was imposed by a court in that proceeding, and the debt did not qualify under § 523(a)(5). *In re Baker*, 2000 WL 1690314, *15 (Bankr.D.S.C.2000). Once these elements are proven, as in this case, the burden shifts to the debtor. The debtor must prove that he does not have the ability to pay the debts, or, if he has the ability to pay the debts, that the benefit to him of a discharge outweighs the detriment to the former spouse. *Fellner v. Fellner (In re Fellner)* 256 B.R. 898, 902 (8th Cir. BAP 2001).

■ If this issue were properly before the Court, Kimberly has proven every element of § 523(a)(15) that she was required to prove. However, as discussed briefly above, Wendall presented evidence to show that he does not have the ability to pay the debts; that is, his monthly expenses (including payment of $1,166.00 each month to Kimberly as maintenance)

exceed his monthly income by more than $100.00. The inquiry ends here, as § 523(a)(15)(A) would be applicable in this case. *Baker* at *17.

For the reasons stated herein, the Court finds that the debts assigned to the Debtor Wendall Waltner by the divorce decree entered by the Circuit Court of Clay County, Missouri, on June 15, 2001, were not intended to be in the nature of alimony, maintenance or support as provided in 11 U.S.C. § 523(a)(5) and, therefore, the Debtor is entitled to a discharge of his marital obligation to pay those debts.[11]

It is therefore

**ORDERED** that Plaintiff Kimberly Waltner is DENIED the relief requested with respect to the seven debts stipulated to at trial, namely:

(1) 1993 Nissan debt in the amount of $6,000 (Union Acceptance Corporation)

(2) Fleet Visa in the amount of $2,810.00

(3) Citibank Visa in the amount of $5,568.00

(4) Platinum Priority Visa in the amount of $8,659.00

(5) Sears in the amount of $344.00

(6) General Account Services, Inc. in the amount of $332.00

(7) Kansas University Medical Center in the amount of $57.00.

It is

**FURTHER ORDERED** that Plaintiff Kimberly Waltner is DENIED the relief requested with respect to an award of suit money in the sum of $500.00 to be paid by the Debtor. It is

---

§ 523(a)(15), even though he had every opportunity to request such relief.

11. The regrettable result of the Court's ruling could well be that Kimberly Waltner, who

also does not have an ability to pay these debts, will be forced to file bankruptcy and discharge the debts in the same manner that Wendall Waltner has discharged them.

**FURTHER ORDERED** that the Debtor, Wendall A. Waltner, be and is hereby denied discharge pursuant to 11 U.S.C. § 523(a)(5) with respect to his obligation to pay maintenance in the sum of $1,166.00 per month and the retroactive maintenance in the sum of $1,280.00 as ordered by the Circuit Court of Clay County, Missouri, on June 15, 2001.