**In re Steven Michael BASILE, Jr. Debtor.**

**Vickey Basile, Plaintiff,**

**v.**

**Steven Michael Basile, Jr., Defendant.**

**Bankruptcy No. 02–50653–JWV.**
**Adversary No. 02–4171.**

United States Bankruptcy Court,
W.D. Missouri.

Feb. 19, 2003.

Lyle L. Odo, Platte City, MO, Michael A. Gould, Kansas City, MO, for plaintiff.

Maurice B. Soltz, Kansas City, MO, for defendant.

## MEMORANDUM OPINION AND ORDER

JERRY W. VENTERS, Bankruptcy Judge.

This Adversary Proceeding comes before the Court on a Complaint to Determine Dischargeability of Debts under 11 U.S.C. § 523(a)(5) or in the alternative under 11 U.S.C. § 523(a)(15). The Complaint was filed by Vickey Basile, the former spouse of the Debtor, Steven M. Basile, Jr. The Court held a trial on this matter on January 15, 2003, and took the matter under advisement. The Court has considered the evidence adduced at trial, the pleadings, and relevant case law and is now ready to rule.

For the reasons set out below, the Court finds that the Debtor's obligation to provide health insurance for his former spouse is in the nature of support. Therefore, the state court judgment for medical expenses and attorney fees awarded to Vickey Basile as a result of the Debtor's failure to provide health insurance is found to be nondischargeable pursuant to § 523(a)(5), but not § 523(a)(15). Further, the Court grants the Plaintiff's request for attorney fees incurred in litigating this adversary proceeding.[1]

## FACTUAL BACKGROUND

The Plaintiff, Vickey Basile ("Vickey" or "Plaintiff") and the Debtor, Steven M. Basile, Jr. ("Steven" or "Debtor") were married on January 22, 1970. On September 14, 1995, the parties entered into a Separation Agreement, the terms of which were incorporated into a Judgment Decree of Dissolution of Marriage in the Circuit Court of Platte County, Missouri, on October 5, 1995 ("Decree"). (Pl.Ex. 1) Under a provision of the Separation Agreement entitled "Maintenance", Steven agreed to pay Vickey $3,000.00 per month in modifiable periodic maintenance and to maintain health insurance for her. According to Vickey, she was never employed outside the home during their 25-year marriage and was not employed at the time of the dissolution. Vickey has had health problems—particularly back problems requiring at least three different surgical procedures—that began while she was still married to the Debtor. Her first back surgery occurred prior to the divorce. Steven acknowledged that he was aware of her health condition at the time of the divorce and agreed to provide her with health insurance coverage. In fact, his company provided Vickey's health insurance for eighteen months after the divorce. However, Steven was unable to locate any replacement insurance after that time. At the trial in this Court, Steven conceded that he has not provided health insurance for Vickey since 1997. Vickey had a second back surgery after the divorce and, without any health insurance coverage, incurred medical expenses that she was unable to pay. Instead of requesting reimbursement from the Debtor, Vickey filed bankruptcy in this Court

---

1. This Memorandum Opinion and Order constitutes the Court's Findings of Fact and Conclusions of Law as required by Federal Rule of Bankruptcy Procedure 7052. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and (J), and the Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.

on November 12, 1998. She received a discharge on February 19, 1999.[2] Subsequently, Vickey required a third back surgery on February 15, 2000, and again had no health insurance to assist with the medical expenses that she incurred. The Debtor testified that he believed this surgery would be covered by Medicare or Medicaid, but Vickey was unable to obtain any type of assistance with her medical expenses. The University of Kansas Hospital (commonly referred to as "KU Medical Center") sued her and obtained a default judgment in the amount of $17,085.85 on December 9, 2002. (Pl.Ex. 2)

Prior to entry of that judgment, on June 12, 2001, Vickey filed a Motion for Contempt against the Debtor in state court alleging that the Debtor was in contempt of court for failure to provide health insurance. She requested reimbursement for the medical expenses she had incurred. At a hearing on the matter, on February 27, 2002, the Debtor admitted that he owed $27,221.40 for the medical expenses that Vickey incurred. (Pl.Ex. 2 ¶ 10) Therefore, the state court ordered the Debtor to pay for health insurance for Vickey and to pay the costs of medical bills not covered by health insurance. (Pl.Ex. 2) The court also awarded Vickey $6,000.00 for attorney fees. However, the court found that there was a change in the Debtor's financial circumstances which justified a reduction in maintenance. The state court therefore granted the Debtor's request to modify maintenance and reduced the amount he was to pay from $3,000.00 to $2,400.00 per month.

The Debtor is a one-third owner of Walker Loudermilk Company, a company that sells supplies to the new home construction industry. He is currently faced with financial difficulties because the nature of his business depends heavily on the economy. The recent downward turn in the economy has caused the Debtor's income to decline. According to his bankruptcy schedules, the Debtor's current monthly income is the same as Vickey's: $2,400.00. The Debtor explained that he lives with a "significant other" and his minor child.[3] He testified that his monthly expenses exceed his monthly income. However, he admits that his "significant other" provides for the rent and her personal expenses in his household budget.

Vickey testified that she is currently unemployed and is unable to work. She has been unsuccessful in obtaining Social Security disability benefits and has not been able to secure any health insurance for herself because of her pre-existing medical condition. Vickey has no dependents and lives in an apartment in Topeka, Kansas. Her only income is the $2,400.00 a month in maintenance that she receives from the Debtor. While Vickey is far from a paragon of financial management,[4] it

---

2. Vickey testified that she discharged $70,000.00 in medical expenses. The Court's records indicate that she did have total liabilities of approximately that amount but her medical debts were just $12,598.24, not $70,000.00. See Case No. 98–50956.

3. The minor child is not Vickey's child, nor is she the child of the woman who presently lives with Steven.

4. For example, Vickey was unable to pay her rent and some other necessary living expenses at the beginning of January 2003 because Steven did not make the usual semi-monthly maintenance payment, so she went to a title loan company and borrowed $1,200.00, secured by a lien on her 1996 Nissan automobile. The loan bears *monthly* interest of 23% and has an *annual percentage rate of 276%*. It requires Vickey to pay $279.11 a month in *interest only*, with a final lump-sum payment of $1,492.61 at the end of one year. Thus, if Vickey does not pay off the loan until the end of one year, she will pay $4,562.76 for a loan of just $1,200.00. (Pl.Ex. 15)

does seem that she has little or no excess income each month on which to live. It clearly would be difficult for Vickey to subsist without the maintenance payments as well as the payment of her medical expenses and attorney fees.

Vickey has requested that the Court find that the medical expenses and attendant attorney fees awarded to her in the state court judgment are nondischargeable. Plaintiff also requests that her attorney fees and costs for this action be taxed against the Debtor. The attorney fees and costs for this action total $1,969.70. (Pl.Ex. 13)[5]

## DISCUSSION

■ The policy underlying Section 523(a)(5) of the Bankruptcy Code[6] favors the enforcement of familial obligations over the debtor's fresh start. *Williams v. Kemp (In re Kemp)*, 232 F.3d 652 (8th Cir.2000) (citations omitted). Section 523(a)(5) provides in pertinent part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . .

(5) to a spouse, former spouse, or child of debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, . . ., or property settlement agreement, but not to the extent that—

. . .

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

11 U.S.C. § 523(a)(5). There are three elements that must be met before a marital support obligation can be determined to be nondischargeable: (1) the debt must be in the nature of alimony, maintenance, or support, (2) it must be owed to a former spouse or child, and (3) it must be in connection with a separation agreement, divorce, or property settlement agreement. *Krein v. Hanagan (In re Krein)*, 230 B.R. 379, 383 (Bankr.N.D.Iowa 1999).

In the present case, the second and third elements are easily met. The judgment debt for medical expenses and attorney fees and costs are indisputably owed to Vickey, a former spouse, and there is no argument that the judgment rendered by the state court was in connection with a separation agreement or divorce decree. The issue before this Court is whether the obligation of the Debtor to provide health insurance coverage for his former spouse is in the nature of support and is therefore nondischargeable.

■ Whether an obligation is in the nature of maintenance or support is a matter of federal bankruptcy law. *Williams v. Williams (In re Williams)*, 703 F.2d 1055, 1056 (8th Cir.1983). The characterization of the obligation depends primarily on the function of the award at the time it was made. *Johnson v. Hamblen (In re Hamblen)*, 233 B.R. 430, 434 (Bankr. W.D.Mo.1999). The party objecting to the

---

**5.** In her Complaint, Vickey also asked that the Court find nondischargeable $18,979.00 in past-due maintenance payments, pursuant to 11 U.S.C. § 523(a)(5). The Debtor conceded at trial that the maintenance and arrearages owed are not at issue. He understands that he must pay these obligations and they will

not be discharged. Therefore, the debts in dispute are $27,221.20 for medical expenses, $6,000.00 for attorney fees awarded in the state court action, and Plaintiff's request for the attorney fees and costs of this action.

**6.** Title 11, United States Code.

discharge under § 523(a) has the burden of proving each element by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The Court may consider several factors in determining whether an obligation is "in the nature of support." *Hamblen* at 434.[7] This Court in *Hamblen* and in *Waltner v. Waltner (In re Waltner)*, 271 B.R. 170 (Bankr.W.D.Mo.2001), applied three factors: (1) the language and substance of the dissolution decree or separation agreement; (2) the relative financial circumstances of the parties at the time of dissolution; and (3) the degree to which the obligation enables the recipient to maintain daily necessities. *Id.*

■ The Court will begin with the language of the Separation Agreement that has been incorporated into the Decree. Exhibit A of the Separation Agreement is divided into sections; under the section entitled "Maintenance", the Debtor agreed to modifiable periodic maintenance and the provision of health insurance. The "Maintenance" provision, in its entirety, reads:

Husband and Wife do hereby agree that Wife is entitled to maintenance pursuant to Section 452.370 of the Revised Statutes of Missouri, as amended, and Husband agrees to pay Wife permanent statutory modifiable periodic maintenance in the amount of Three Thousand Dollars ($3,000.00) per month, beginning on the 1st day of September, 1995, and continuing on the 1st day of each month thereafter until further Order of this Court. The parties further agree that Husband is employed, earning a good and substantial income, and therefore, is not entitled to maintenance and further, Husband waives any claim he may have to maintenance from Wife. *Further, Husband agrees to maintain health insurance for Wife in the same amount and under the same terms presently being maintained by Husband through his employed [sic] at Walker–Loudermilk Company[.] Husband shall maintain and pay for said health insurance for the benefit of Wife, providing Wife with all necessary documents, cards, authorizations to obtain the services and benefits provided by said health insurance program.*

(Pl.Ex. 1)(emphasis added). The placement of the italicized provision in the section entitled "Maintenance," coupled with the plain language of the provision, provides ample evidence of the parties' intent for this obligation to function as support. See *In re Rice*, 94 B.R. 617, 618 (Bankr.W.D.Mo.1988)(placement of the provision considered in determining the intent of the parties). It is clear that the parties intended that there be two components to the maintenance to be paid to Vickey: (1) modifiable periodic maintenance of $3,000.00 a month, and (2) the provision of health insurance coverage. The first sentence of the paragraph provides for the modifiable periodic maintenance, and the second sentence states that Steven earned a good income and was not entitled to maintenance from Vickey. The

7. See also, *Moeder v. Moeder (In re Moeder)*, 220 B.R. 52, 54 (8th Cir. BAP 1998)("Factors to be considered by the courts in determining whether an award arising out of marital dissolution proceedings was intended to serve as an award for alimony, maintenance or support, or whether it was intended to serve as a property settlement include, but are not limited to: the relative financial conditions of the parties at the time of the divorce; the respective employment histories and prospects for financial support; the fact that one party or another receives the marital property; the periodic nature of the payments; and whether it would be difficult for the former spouse and children to subsist without the payments.") citing *Tatge v. Tatge (In re Tatge)*, 212 B.R. 604, 608 (8th Cir. BAP 1997) and *Kubik v. Kubik (In re Kubik)*, 215 B.R. 595, 599 (Bankr.D.N.D.1997).

third sentence then begins, "Further, Husband agrees to maintain health insurance for Wife ...", and goes on to spell out Steven's obligation with respect to the health insurance. The use of the word "Further" convinces the Court that the parties intended the continued health insurance coverage to be a part of Steven's maintenance obligation to Vickey. "Further" means "in addition," or "moreover." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1981).

Moreover, there is no mention of maintenance or the continuation of health insurance coverage in the separate section of the Separation Agreement dealing with the division of marital property and the payment of debts. This reinforces the Court's conclusion that the provision of health insurance coverage was in no way intended to be a part of any property division or settlement.

Further evidence that the obligation to provide health insurance was intended to function as support can be found in the state court's judgment dated March 19, 2002. (Pl.Ex. 2) The state court ordered the Debtor "to pay for health insurance for the Petitioner [Vickey] and in default thereof to pay the costs of medical bills not covered by health insurance." (Pl.Ex. 2, ¶ 4) The state court had an opportunity to modify the Debtor's obligation to maintain health insurance but it did not do so. Although the court did modify the award of periodic maintenance by reducing it to $2,400.00 per month, it left unchanged the Debtor's obligation to provide health insurance and instead awarded Vickey $27,221.40 for her post-divorce uninsured medical expenses. These rulings by the state court support a finding that the insurance obligation is in the nature of support.

Turning to the relative financial circumstances of the parties at the time of the dissolution, the evidence abundantly supports our conclusion that the insurance coverage was intended as support. Vickey was unemployed at the time of dissolution, whereas Steven's company was thriving. The monthly maintenance and health insurance benefits were meant as support since Vickey was unemployed and, in fact, had never worked outside the home during the marriage. She was also hampered by a pre-existing health condition, of which Steven was admittedly aware. In Exhibit A to the Separation Agreement, the parties agreed that Vickey "is presently unemployed and is suffering from certain permanent disabilities, including back, hand and arm disabilities and is unable to work ...." (Pl.Ex.1) There then immediately followed the above-quoted paragraph for the payment of periodic maintenance and the provision of health insurance. In that paragraph, the parties agreed that Steven—in stark contrast to Vickey—" is employed, earning a good and substantial income...."

These provisions make it clear that the insurance coverage was an integral part of the maintenance and support that Steven was to pay. At one end of the spectrum, Steven was earning a good and substantial income; at the other end, Vickey was unemployed and was unable to work due to various permanent disabilities. Obviously, with such disabilities, Vickey would find it difficult or practically impossible to obtain and pay for health insurance coverage on her own.

Finally, another factor indicating that the parties intended this insurance obligation to serve as support is that the obligation provides for necessities and staples of everyday life. *Williams*, 703 F.2d at 1057. "It is hard to contemplate any area of one's daily life that is more susceptible to unanticipated financial burdens than that brought on by illness. The re-

840

quirement that the [Debtor] provide all premiums for full medical and dental health insurance is clearly related to [the former spouse's] support and well being." *In re Stone*, 79 B.R. 633, 640 (Bankr.D.Md. 1987). Obtaining medical care is not a luxury, it is a necessity. In many instances, an inability to pay for medical insurance is tantamount to being unable to obtain appropriate medical care, unless and until one is qualified for Medicare or Medicaid coverage by age or poverty. Here, Vickey is unemployed, and she has no ability or opportunity to obtain health insurance from an employer. She has attempted to find private health coverage, but has been denied because of her pre-existing condition. She has already incurred medical expenses that she was unable to pay and filed her own bankruptcy case in 1998 to discharge those debts. Several bankruptcy courts have determined that the obligation to provide health insurance to a child or former spouse is a non-dischargeable support obligation. *See e.g.,In re Arnott*, 210 B.R. 651 (Bankr.S.D.Fla.1997); *In re Olson*, 200 B.R. 40 (Bankr.Neb.1996); *In re Northcutt*, 158 B.R. 658 (Bankr. N.D.Ohio 1993); *In re English*, 146 B.R. 874 (Bankr.S.D.Fla.1992); *In re Stone*, 79 B.R. 633 (Bankr.Md.1987).

■ Applying the factors discussed above to the facts of this case, the Court finds that the Debtor's obligation to maintain health insurance for his former spouse was intended by the parties to function as support. And, since the debts at issue were created from a judgment entered against the Debtor for his failure to provide health insurance, it necessarily follows that the debts or losses incurred by Vickey for her medical expenses—expenses that would have been covered by insurance if

Steven had provided it as ordered and agreed—are also nondischargeable pursuant to § 523(a)(5). Furthermore, the $6,000.00 in attorney fees which Vickey incurred in enforcing the requirement for Steven to provide health insurance are also nondischargeable. This conclusion is supported by the Eighth Circuit: "Whether in any given case such obligations are in fact for 'support' and therefore not dischargeable in bankruptcy, is a question of fact to be decided by the Bankruptcy Court as trier of fact in light of all the facts and circumstances relevant to the intention of the parties." *Williams*, 703 F.2d 1055, 1057 (8th Cir.1983). Here, the attorney fees were incurred by Vickey to enforce a support obligation, and Vickey has no ability to pay those fees. Thus, the fees are also nondischargeable. See *Falk & Siemer v. Maddigan (In re Maddigan)*, 312 F.3d 589 (2nd Cir.2002).

Because the Court has found these debts are nondischargeable under § 523(a)(5), it is not necessary to address the Plaintiff's alternative theory of relief pursuant to § 523(a)(15).[8]

Counsel for the Debtor relies on two cases from this District, *In re Rice*, 94 B.R. 617 (Bankr.W.D.Mo.1988), and *In re Schurman*, 130 B.R. 538 (Bankr.W.D.Mo. 1991), to support the assertion that these debts are not in the nature of support. However, neither case assists the Debtor. The court in *Rice* found that the debtor's obligation to pay medical expenses was not in lieu of maintenance, but was intended to balance a property settlement. The court reasoned that since the placement of this provision was in the division of property section of the decree rather than the maintenance section of the decree the parties intended for the obligation to be a proper-

**8.** Section 523(a)(15) of the Bankruptcy Code provides for debts that are "not of the kind

described in paragraph (5)."

ty settlement. As discussed previously, *Rice* actually supports this Court's finding that placement of the provision is important in determining whether the obligation was intended as support. In *Schurman*, the court applied the same three-part test employed by this Court in this case. However, the facts in *Schurman* were vastly different; the medical bills that were discharged were the debtor's alone and the former spouse would not be harmed by the discharge. These cases are distinguishable on their facts and do not provide any authority for this Court to find any differently than it has held above. The Court has not been presented any evidence to show that the Debtor's obligation to provide health insurance was some type of property settlement. Therefore, the Court has no difficulty finding that the obligation to maintain health insurance was intended to be in the nature of support.

Finally, the Plaintiff requests the Court to award her attorney fees for litigating this matter. As a general rule attorney fees are not awarded in dischargeability litigation absent some basis in statute or contract. *Seimer v. Nangle* (*In re Nangle*), 281 B.R. 654, 657–59 (8th Cir. BAP 2002). The Court finds a basis to award the Plaintiff attorney fees for this action in the dissolution decree. Under the "Miscellaneous Provisions" of the Separation Agreement incorporated in the Decree, paragraph 4 reads:

> Breach of any of the provisions of this agreement shall not restore any rights of the other in any property, but the parties shall look solely to this agreement for relief subject to approval, revision, modification and supervision of the Court as provided in this agreement. *Husband agrees to pay the Wife's attorney fees should she incur any damages due to the Husband's breach of this agreement.* Wife agrees to pay the Husband's attorney fees should he incur any damages due to the Wife's breach of this agreement.

(Pl.Ex. 1) (emphasis added). Plaintiff would not have incurred the cost of this litigation if the Debtor had not breached his obligation to maintain health insurance. Thus, the Court finds that Vickey is entitled to recover $1,969.70 for her attorney fees in the Adversary Proceeding, plus court costs.

Therefore, for the reasons stated herein, it is

**ORDERED** that the Debtor, Steven M. Basile, Jr., be and is hereby denied discharge pursuant to 11 U.S.C. § 523(a)(5) and judgment is hereby entered in favor of Plaintiff, Vickey Basile, in the sum of $27,221.20 for medical expenses incurred, plus interest as provided by law. It is

**FURTHER ORDERED** that the Debtor, Steven M. Basile, Jr., be and is hereby denied discharge pursuant to 11 U.S.C. § 523(a)(5) and judgment is hereby entered in favor of Plaintiff, Vickey Basile, in the sum of $6,000.00 for attorney fees awarded by the state court in the contempt action, plus interest as provided by law. It is

**FURTHER ORDERED** that the Debtor, Steven M. Basile, Jr., be and is hereby denied discharge pursuant to 11 U.S.C. § 523(a)(5) and judgment is hereby entered in favor of Plaintiff, Vickey Basile, in the sum of $18,579.00 for past-due maintenance awarded by the state court in the contempt action, plus interest as provided by law. It is

**FURTHER ORDERED** that the Plaintiff, Vickey Basile, be and is hereby awarded the sum of $1,969.70 in attorney fees, plus court costs, incurred in litigating this matter, plus interest as provided by law. It is

**FURTHER ORDERED** that the Plaintiff, Vickey Basile, be and is hereby denied the relief requested under 11 U.S.C. § 523(a)(15).